OPINION OF THE COURT
Stanley Gartenstein, J.
In 1976, after concerted efforts by Bar Associations and civic groups, and responding to calls from the Bench (cf. Matter of Juan R v Necta V, 84 Misc 2d 580), the Legislature amended article 5 of the Family Court Act (filiation proceedings) by redefining the rights conferred thereunder in gender-neutral terms (L 1976, ch 665, eff Jan. 1, 1977). This amendment effectively brought paternity proceedings into the 20th Century and was to become the first major change in the philosophy underlying filiation proceedings since their origin in the Elizabethan Poor Laws of 1576. In so doing, the Legislature silenced critics of the old statutory scheme who raised doubts as to its constitutionality (cf. Crane v Battle, 62 Misc 2d 137) based upon a failure to afford equal protection to the respective sexes by limiting access to the court for the purpose of bringing a proceeding thereunder to the female, thus discriminating against a male on the basis of sex without a valid basis for classification.
*476 Contrary to prevailing belief that these amendments effectively defused this issue for all time, it now appears in a new incarnation in the form of a motion to strike testimony pursuant to the exclusionary provisions of section 531 of the Family Court Act. The latter establish a requirement of corroboration for all testimony which might tend to prove sexual liaison and/or access to the mother during the crucial time prior to conception by any person other than the accused putative father. The relevant portion thereof reads as follows: “If the respondent shall offer testimony of access by others at or about the time charged in the complaint, such testimony shall not be competent or admissible in evidence except when corroborated by other facts and circumstances tending to prove such access.”
In this trial, the male petitioner seeks to establish that he is the father of the subject infant. Respondent mother, denying his paternity, admits sexual relations with him, but claims that she had liaisons with other men during the crucial time period. Petitioner arguing that article 5 is now á gender-neutral statute, objects to her uncorroborated testimony to this effect and moves to strike it, thus raising the intriguing question of gender neutrality concerning the corroboration provisions of section 531.
CORROBORATION OF OTHER SEXUAL LIAISONS:
In view of the fact that conception can only take place one way, it should come as no particular shock that defenses to a filiation proceeding are extremely limited. Nevertheless, one defense based upon access by and/or sexual acts with others during the crucial time always seems novel to its proponent. That this defense is universal is attested to by the manner in which jurisdictions all over the world respond to it. Nova Scotia, for example, takes these witnesses at their word and holds them all liable for contribution to the support of the child (Geo VI, ch 20, Stat of Nova Scotia, 1938; cf. Matter of Dorn “HH” v Lawrence “II”, 31 NY2d 154). Norway also holds every man who had relations with the mother at the time of conception liable for contribution to support (cf. Matter of Dorn “HH” v Lawrence “II”, supra, and authorities cited therein).
New York’s traditional approach has been an insistence on finding the true father. Thus, while recognizing the *477 validity of evidence of access by others to negate paternity, New York would not allow its proceedings to deteriorate into a parade of male witnesses, all attesting to their prodigious success with the petitioning mother, unless such testimony was independently corroborated. This requirement, originally in effect solely within the City of New York and held unconstitutional on that basis (Commissioner of Welfare [Martinez] v Torres, 263 App Div 19), was given State-wide application with the enactment of section 531 and upheld on that basis (Matter of Dorn “HH” v Lawrence “II”, supra).
That the defense of access by others has as much utility for a woman defending the paternity suit of a man alleging himself to be the father as the reverse is evident from the instant proceeding. Accordingly, the logic of an objection to this evidence when offered by the woman without corroboration thereof is manifest.
Examination of the “gender-neutrality” amendments of 1976 as they apply to section 531 appears to confirm the logic of this legal posture. The only change of section 531 thus enacted by the Legislature was to amend the second sentence thereof by changing the text from “respondent” to “alleged father”. The successive versions of this sentence follow:
Prior to amendment:
“§ 531. Hearing
“The trial shall be by the court without a jury. The mother or the respondent shall be competent to testify but the respondent shall not be compelled to testify.”
As amended:
“§ 531 Hearing
“The trial shall be by the court without a jury. The mother or the alleged father shall be competent to testify but the respondent shall not be compelled to testify.”
It is patently obvious that the Legislature, while implementing gender neutrality in article 5, did not content itself simply with an indiscriminate change of pronouns. Instead, it appears that the text of each procedural device contained therein was separately weighed and reimplemented. Section 531 was no exception. The sole change *478 effectuated therein, that from “respondent” to “alleged father”, constitutes a legislative recognition that, with gender neutrality now a fact, the broad category of respondents no longer limits its membership to putative fathers. Accordingly, moving to the crucial portion of section 531, the undisturbed use of the word “respondent” in the text of the corroboration section thereof must be held to constitute recognition of the availability of this defense (viz., access by others) to both sides, and accordingly the necessity of corroboration thereof when used by a woman defending against an alleged father’s petition. Consistent therefore, with rules of legislative construction and simple logic, we so hold.*
The motion is granted. Respondent mother’s testimony of access by others during the crucial time in issue, lacking corroboration, is stricken.

 Were the law concerning status clear, we might have been inclined to base our ruling on a constitutional footing. The Court of Appeals in Matter of Dorn “HH” v Lawrence “II” (31 NY2d 154, 158-159) implied that rules of evidence which pass constitutional muster when a question of liability is the sole one to be decided, as opposed to a determination of status (there dealing with husband’s right to testify to his nonaccess in article 5 of the Family Court Act proceedings as opposed to prohibition thereof when child’s status is at stake) might not be upheld where status is in fact to be determined. In this connection the seminal holding of the Court of Appeals in Commissioner of Public Welfare v Koehler (284 NY 260) to the effect that a filiation proceeding does not determine the status of the child appears to be that court’s last word on the subject. If in fact, the sole purpose of article 5 is to impose liability for support for the benefit of the public fisc, the gender-neutrality amendments of 1976 become incomprehensible in that they must logically, according to Koehler, be construed as a proceeding brought by a putative father for the sole purpose of making him liable for support. That Koehler may be dated by simply reasoning that the Legislature intended to confer a right of action in favor of a putative father rather than the reverse does not relieve trial courts and intermediate appellate courts from recognizing that it is in fact the last word from the Court of Appeals in this sphere. Further confusion is engendered by the actions of various health departments, New York City included, in changing a birth certificate upon the entry of an order of filiation, again an anomaly in the face of Koehler. Post-“gender-neutrality” amendment opinions appear to be divided and cover a broad range of possible holdings, all bearing a common thread, yet none agreeing with others in every respect (cf. Matter of Czajak v Vavonese, 104 Misc 2d 601; Matter of J. [Anonymous], 50 AD2d 890; Matter of Alvin B. v Denise C., 85 Misc 2d 413; Matter of John J. S. v Theresa L., 99 Misc 2d 578; Matter of Salvatore S. v Anthony S., 58 AD2d 867; Joye v Schechter, 112 Misc 2d 172; Lory v De Luca, NYU, July 19, 1983, p 15, col 2; Matter of Terese C., NYU, Aug. 25, 1983, p 6, col 3; Matter of Commissioner of Social Servs. v Lazaro F., 99 Misc 2d 408; Matter of Kordeck v Wood, 90 AD2d 209).
In view of the fact that this point of law is the very foundation of article 5, the Legislature is urged to clarify the question of whether or not it intended to establish article 5 as a status proceeding, thereby changing the import of Koehler. Failing redefinition by the Legislature, the prevailing confusion may well deteriorate into chaos.