T.R., Appellant (Defendant Below),

v.

A.W., by her next friend, Lee PEARSON, Appellee (Plaintiff Below).

No. 3–883A275.

Court of Appeals of Indiana,
Third District.

Oct. 31, 1984.

Rehearing Denied Jan. 24, 1985.

Howard S. Grimm, Jr., Michael A. Aspy, Fort Wayne, for appellant.

Robert E. Kirsch, Deputy Pros. Atty., Child Support Div., Noble County Prosecutor's Office, Albion, for appellee.

HOFFMAN, Judge.

On October 21, 1977, G.L.W. filed a petition to establish paternity of her daughter, A.W., under IND.CODE § 31–4–1–1 *et seq.*[1] Her petition alleged that T.R. was the father of A.W., and responsible for her support. Following trial by jury, a verdict was rendered in favor of T.R.

On March 31, 1983, A.W., by her next friend, Lee Pearson, Director of the Noble County Welfare Department, filed a petition under IND.CODE § 31–6–6.1–1 *et seq.* alleging that T.R. was her father. T.R. filed a motion for summary judgment contending that this petition was barred by the doctrine of res judicata. The trial court denied this motion. On T.R.'s petition, this issue was certified for interlocutory appeal to this Court.

The sole issue on appeal is whether the same man can be prosecuted a second time for paternity where the same facts and legal issues have been fully litigated and resolved in his favor by a court of competent jurisdiction.

In order to apply the doctrine of res judicata, the following elements must be satisfied:

    (1) the former judgment must have been rendered by a court of competent jurisdiction;

    (2) the former judgment must have been rendered on the merits;

    (3) the matter now in issue was, or might have been, determined in the former suit; and

    (4) the controversy adjudicated in the former action must have been between parties to the present suit or their privies.

*Williams v. Williams,* (1981) Ind.App., 427 N.E.2d 727; *Glass v. Continental Assur. Co.,* (1981) Ind.App., 415 N.E.2d 126.

The only element at issue in this case concerns parties or their privies. At the time A.W.'s mother brought the original paternity action, mother and daughter were clearly in privity.

For purposes of issue preclusion, the element of privity contemplates a mutual or successive relationship to the same rights or interests which were the subject matter of prior adjudication. In Indiana, a " '[p]rivy' is one who after rendition of the judgment has acquired an interest in the subject matter affected by the judgment." *Smith v. Midwest Mut. Ins. Co.,* (1972) 154 Ind.App. 259, at 269, 289 N.E.2d 788, at 793.

Under the paternity statute in effect at the time of G.L.W.'s 1977 lawsuit, paternity actions could be commenced by the mother as the child's representative for the purpose of recovering from the father a reasonable share of the child's necessary support. IND.CODE § 31–4–1–1 *et seq.* Under the present statute, the state or county departments of public welfare may

---

1. Repealed by Acts 1978, P.L. 136, Section 57.    *See now,* IND.CODE § 31–6–6.1–1 *et seq.*

also act as the illegitimate's representative in a suit to enforce support. *See,* IND. CODE § 31-6-6.1-2(b). Under either statute, the child is the real party in interest, and the purposes served by any representative is the same, *i.e.,* to enforce the child's support.

■ The record clearly indicates that G.L.W. fully represented A.W.'s rights in the 1977 suit. This trial was held before a jury. Evidence was first presented by G.L.W., then by T.R., and finally rebutted by G.L.W. The trial judge properly instructed the jury on the law, and a verdict finding that T.R. was not A.W.'s father was returned. The issue of paternity was not clouded by the possibility of compromise because of other issues to be decided, as might happen in a dissolution proceeding. The suit dealt exclusively with the question of paternity and the concomitant obligation of support in the event paternity was established. It is exactly this sort of case in which issue preclusion must be invoked. The issues now forwarded are identical to those forwarded in the 1977 suit, and liability in both cases is based on the same facts. The issues were fully and conclusively litigated in the first action and may not be relitigated.

Not only were the elements of issue preclusion present, but the policies favoring preclusion clearly outweigh the reasons for retrying this matter. First, courts favor the final repose of decisions. The purpose of our court system is to resolve disputes. If different parties representing the same interest are allowed to successively relitigate the same facts and issues, final judgment would become an illusive, if not unattainable goal.

Second, courts should promote policies which discourage inconsistent judgments. While relitigation of this case is not certain to produce contrary results, the possibility is not inconceivable.

Third, the need to avoid harassing litigation is a legitimate concern, worthy of consideration in barring subsequent suits. In 1977, T.R. successfully defended the suit brought by A.W.'s mother, G.L.W., which was based on the same facts and legal issues now forwarded. T.R. now faces the same ordeal, embarrassment, and expense incurred in the 1977 suit. Were this a criminal matter, he would be protected by the double jeopardy provisions of the United States and Indiana constitutions. It seems fundamentally unfair to make him run the same gambit a second time.

Finally, the failure to invoke preclusion in this case results in an unnecessary delay and additional burden on an already overcrowded court system. Seven years have passed since the original trial resolved this issue in T.R.'s favor.

■ From the child's perspective, the imposition of preclusion will not dilute any rights not already forwarded by her mother in the first suit. The present statute, by joining the mother, child, and putative father as necessary parties to paternity actions avoids the problem now considered. It does not, however, extend to the parties or their privies a new cause of action where their cases have been fully litigated under the prior statute.

For these reasons, the doctrine of issue preclusion bars retrial of this case. The decision of the trial court is reversed and remanded with instructions to grant T.R.'s motion for summary judgment.

Reversed and remanded.

STATON, P.J., concurs.

GARRARD, J., dissents with opinion.

GARRARD, Judge, dissenting.

Although my sentiment supports the majority reaction to this appeal, my understanding of Indiana's position concerning the doctrine of res judicata requires me to dissent. Central to our disagreement, however, is the majority's assumed conclusion that the mother's original action was brought strictly in a representative capacity. I believe it clear under the prior statute that the mother had a substantial interest of her own in the proceeding, an inter-

est that was not necessarily and solely identical with the interests of her child. Clearly under Indiana law the child was not in privity with her. *See, e.g., Tobin v. McClellan* (1947), 225 Ind. 335, 73 N.E.2d 679.

The case arose from a fact situation made possible by a change in the law between the times the two actions were brought. When the mother filed the initial paternity suit such actions were controlled by IC 31-4-1-1 *et seq., Children Born Out of Wedlock.* Some of the relevant sections of that chapter are as follows:

"Sec. 1. It is the obligation of the state of Indiana to provide proper legal procedures that will enable children born out of wedlock to have proper care, maintenance, education, protection, support and opportunities the same as children born in wedlock; and it is the purpose of this act to establish procedures that will enable such children to have such rights and privileges.

Sec. 2. The parents of a child born out of wedlock and not legitimated, hereinafter referred to in this act as the 'child,' owe the child necessary maintenance, medical care, education, and support, and are liable for the child's funeral expenses. The obligations imposed upon parents to support their legitimate children are hereby imposed upon the parents of children born out of wedlock.

Sec. 3. The mother may recover from the father a reasonable share of the necessary support and care of the child, including necessary maintenance, medical care, education and the child's funeral expenses in the event of the death of the child.

Sec. 4. The mother may recover from the father the necessary expenses of the pregnancy and birth.

\* \* \* \* \* \*

Sec. 9. An action to compel support may be brought by the mother, or, in case of her death, by her legal representatives. If the mother be insane, of unsound mind, under eighteen (18) years of age or under any other disability, the action may be brought by her guardian or next friend. If the mother dies during the pendency of the action, the child by its guardian or next friend may be substituted for the mother. The action shall be commenced by filing a verified petition."

Under the law effective at the time of the mother's initial suit, only the mother could file a petition pursuant to the statutorily defined procedure for establishing an alleged father's obligation to support his child. *A‗‗‗. B‗‗‗. v. C‗‗‗. D‗‗‗.* (1971), 150 Ind.App. 535, 277 N.E.2d 599; *Fisher v. State of Indiana ex rel. Morrow* (1947), 117 Ind.App. 552, 74 N.E.2d 743 (decided under 3–631, Burns' 1946 Replacement which was replaced, but not in effect changed, by IC 31–4–1–9); *accord, Harter v. Johnson* (1861), 16 Ind. 271.

Effective October 1, 1979, IC 31-4-1-1 *et seq.* was repealed and replaced by IC 31-6-6.1-1 *et seq.* (Acts 1979, P.L. 277, Section 1). An important aspect of the new act is that the mother is no longer the only person in whose name a paternity action can be brought. IC 31-6-6.1-2 reads as follows:

"Persons who may file paternity action—Necessary parties.—(a) A paternity action may be filed by the following persons:

(1) The mother, or expectant mother.

(2) A man alleging that he is the child's biological father, or that he is the expectant father of an unborn child.

(3) The mother and a man alleging that he is her child's biological father, or by the expectant mother and a man alleging that he is the biological father of her unborn child, filing jointly.

(4) A child.

A person under the age of eighteen [18] may file a petition if he is competent except for his age. A person who is otherwise incompetent may file a petition through his guardian, guardian ad litem, or next friend.

(b) The state department of public welfare or a county department of public welfare may file a paternity action if:

(1) The mother;

(2) The person with whom the child resides; or

(3) The director of the county department of public welfare;

has executed an assignment of support rights under Title IV–D of the federal Social Security Act [42 U.S.C. 651 et seq.]

(c) In every case, the child, the child's mother, and any person alleged to be the father are necessary parties to the action. [IC 31–6–6.1–2, as added by Acts 1979, P.L. 277, Sec. 1; 1980, P.L. 183, Sec. 2; P.L. 291–1983, Sec. 1.]"

Under this statute, unlike its predecessor, the child is a necessary party to the paternity action. Had this statute been in effect in 1977 when the mother filed the initial petition, and assuming the child would have been made a party as required before maintaining the action, the doctrine of res judicata would bar the present suit by the child.

Because A.W. clearly was not a party to the prior suit, T.R. instead argues that we should find that she was in privity with her mother and thus bound by the prior judgment as to the question of his paternity. In support of his contention, T.R. quotes extensively from *In re Estate of Nye v. First National Bank* (1973), 157 Ind.App. 236, 299 N.E.2d 854, *reh. denied* 157 Ind. App. 236, 301 N.E.2d 786. The *Nye* court held that the executor of an Indiana will could not subsequently relitigate in Indiana the due execution of decedent's Florida will where a Florida court had previously decided in favor of the will's validity in a suit litigated by the residuary legatee of the Indiana will. Relying on cited sections and comments from the A.L.I. Restatement of the Law of Judgments, the court reasoned that the executor's interest in the will contest was as the representative of the legatees' interests. The executor had no direct interest in the result of the litigation. "[W]hen the stranger to the prior litigation [the executor] is a party to the subsequent litigation *only in a representative capacity*, the concern is not whether the representative has had his day in court but whether the person represented has." *Nye, supra* 299 N.E.2d at 870. Because of the executor's appearance merely in a representative's capacity, the court found the executor and legatee were in privity as to the question of which will was the testator's valid last will.

"Section 83 of the Restatement and the Comment thereto use the word *privity* to describe the identity of interests which may so connect persons in either their personal or their representative capacities that one not a party to an action may nevertheless be bound by the judgment rendered therein. Section 83 and its Comment a read as follows:

'A person who is not a party but who is in privity with the parties in an action terminating in a valid judgment is, to the extent stated in Sections 84–92, bound by and entitled to the benefits of the rules of res judicata.

*Comment:*

a. Privity is a word which expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties. The word 'privy' includes those who control an action although not parties to it (see Section 84); *those whose interests are represented by a party to the action* (see Sections 85–88); successors in interest to those having derivative claims (Sections 89–92). There are other persons whose interests may or may not be less directly affected by a judgment because of their relation to one of the parties to the judgment; the effect of a judgment upon such persons is dealt with in Topic 3 (Sections 93–111).

The statement that a person is bound by or has the benefit of a judgment as a privy is a short method of stating that under the circumstances

and for the purpose of the case at hand he is bound by and entitled to the benefits of all or some of the rules of res judicata by way of merger, bar or collateral estoppel. To determine when and to what extent he is bound or has rights, it is necessary to consider his relation to the parties to the action or to the subject matter of the action.' (our emphasis)"

*Nye, supra* at 869–870.

The question remains whether the mother here was acting as the representative of the child in the first paternity action to justify the same finding of privity as was found in *Nye.* Section 85(1)(A) of the Restatement, quoted from *Nye,* states:

"(1) Where a judgment is rendered in an action *in which a party thereto properly acts on behalf of another,* the other is

(a) bound by and entitled to the benefits of the rules of res judicata with reference to such of his interests as at the time are controlled by the party to the action; . . . ." (our emphasis)

299 N.E.2d at 869.

Further in *Nye* the court cited an Oregon case for the proposition that " '[A] trial in which one party contests his claim against another should be held to estop a third party only when it is realistic to say that the third party was fully protected in the first trial.' " *Nye,* 299 N.E.2d at 870.[1]

I have found no Indiana cases which have decided the issue now before us. I do find assistance in considering cases from Indiana and other jurisdictions which involve the effect of prior paternity determinations in other contexts.

*A. B. v. C. D.* (1971), 150 Ind.App. 535, 277 N.E.2d 599 was a declaratory judgment action in which a woman's second husband sought to be declared the natural father of the woman's child born during her first marriage. The divorce decree ending the first marriage awarded the wife custody of the child as a child of the marriage. The defendant ex-husband argued that the sec-

ond husband was in privity with the wife as to the issue of the child's status. In finding against the defendant on that issue the court stated:

"Even though we might be persuaded to agree that by marrying a person known to have been previously married and now purportedly divorced, one is estopped to question the marital status decreed by the purported divorce (which we do not concede), we cannot accept the thesis that he also estops himself to question the paternity implications of a support and custody order made incidental to the divorce decree. *Such an order does not affect the child's status, especially when the child is not a party to the action. In fact, the want of any binding effect on the child's status seems to be the basic reason for the widespread practice of not appointing a guardian ad litem for him, or otherwise providing for his representation in divorce cases and paternity-support cases.* The finding that the child 'was born as the issue of this marriage' amounts to no more than a finding that he was born to the wife during the marriage, a fact not in dispute in the instant case, nor in the divorce case, so far as the record here reveals.

*It would seem to be basic, and beyond challenge, that anything decided in the case at bar is in no way binding on the child or on his personal representative or his heirs after his death. That is so for the simple reason that he is not a party to this action.* The child is not a chattel the title to which is in dispute between rival claimants. Each of the two rivals (who are the only parties to this action) lays claim to an exclusive interpersonal relationship between himself and a third person (the child). The law now presumes the existence of that relationship between the third person (the child), and the defendant. The other side of that coin, practically speaking at least, is the presumption that the relationship of father and son does not exist

---

**1.** Citing *Wolff v. DuPuis* (1963), 233 Or. 317, 378  P.2d 707, 710.

between plaintiff and the child. *That presumption can be overcome and the relationship can be judicially established only in an action to which the child is a party.*

It would avail plaintiff nothing to establish facts relating to paternity in a judgment binding only on himself and the defendant. Such a determination would not make him the child's heir apparent, nor, so long as Indiana continues to adhere to the mutuality requirement in its doctrine of *res judicata,* could the child avail himself of such a judgment to make the child the plaintiff's heir." [2]

227 N.E.2d at 616, 617. (our emphasis)

The court in *A. B. v. C. D.* went on to hold that the second husband's paternity could be established by declaratory judgment in an action in which the child and mother were joined, the statutory procedure provided by IC 31-4-1-1 *et seq.* not being available to anyone but the mother.

In *Ruddock v. Ohls* (1979), 91 Cal.App.3d 271, 154 Cal.Rptr. 87, a child through a guardian ad litem sued to establish a child-parent relationship between herself and her mother's ex-husband. In the prior dissolution action, to which the child was not a party, the court had determined that the man was not the child's father. The California court said:

"To hold a child bound prospectively by a finding of nonpaternity in a divorce action in which the child was not a party would be to allow the conduct of the mother to foreclose the most fundamental right a child possesses in our system of jurisprudence."

154 Cal.Rptr. at 91. The court expressed concern over the likelihood of a full adversary hearing on the paternity issue given the other concerns the mother might have competing with her desire to establish paternity: reticence to having her past personal life subject to scrutiny; guilt feelings about the dissolution; availability of government aid to support the child; desire to keep the child as hers alone, possible concessions from the alleged father on support and property settlement. *Id.*[3] The court concluded:

"The public policy favoring the establishment of paternity and requiring fathers to assume their support obligations is a highly beneficial one, but equally salutary is the interest in the finality of judgments. If either party wishes to insure finality to the paternity question in the marital dissolution action they may do so by taking the simple step of joining the child, thus accommodating both policies in a single proceeding. The issue of paternity determined in a marital dissolution action is not binding upon the child unless joined as a party. In contrast, in

**2.** In two footnotes to the quoted text Judge White observed:

"In an annotation in 65 A.L.R.2d at page 1393, it is said:

'But the widespread practice in other jurisdictions is to litigate the question of paternity without the appointment of a guardian ad litem. One reason for this practice is that, in so far as support for the child is concerned, it is paid to the wife, and she ordinarily has such an interest in the question as to ensure that it will be adequately presented to the court. Again, if the child is not a party to the action he is not bound by the adjudication concerning paternity, so that there is little point in appointing a guardian ad litem for him.'

The rule that the child is not bound by a finding of nonpaternity in a divorce case is supported by the weight of authority. [citations omitted]

Our Supreme Court has stated the general requirement that the plea of res judicata is avail-

able only when there is privity and mutuality of estoppel. Under this requirement only parties or their privies to the former judgment could take advantage of or be bound by the former judgment. *Mayhew v. Deister* (1969) [144] Ind. App. [111] 244 N.E.2d 448, 454.

*If there be instances in which a child's interest is represented by a parent so that the judgment binds the child even though he is not a party, this case lacks the identity of interest between the child and either party necessary to make either the child's representative."* (our emphasis)

**3.** Two law review articles discuss the problem of compromise in a divorce proceeding as to the paternity issue and the lack of preclusive effect of such a finding on the subsequent litigation of the paternity issue by the child. Comment, *Res Judicata and Paternity,* 37 U.Colo.L.Rev. 479; *Privity, Preclusion and the Parent-Child Relationship,* 1977 B.Y.U.L.Rev. 612.

an action for support or under the Uniform Parentage Act formally brought on behalf of the child, the judgment may be shown to be binding without actual joinder if the mother acted in a proper representative capacity." [statutory citations omitted]

*Id.* at 95.

In sum, in California under *Ruddock*, a child cannot be bound by a paternity determination in a dissolution proceeding unless formally joined as a party. However, a child can be bound by such a determination in an actual paternity proceeding brought by the mother on the child's behalf, but only if the mother "acted in a proper representative capacity." *Id.* "If it appears that a particular party, although not before the court in person, is so far represented by others that his interest received actual and efficient protection, the decree will be held to be binding upon him." *Id.* at 92.

Other cases have recognized that, although not named as a party to a paternity suit, the child is the real party in interest in such a suit. *Everett v. Everett* (1976), 57 Cal.App.3d 65, 129 Cal.Rptr. 8; *Stevens v. Kelley* (1943), 57 Cal.App.2d 318, 134 P.2d 56;[4] *A. B. v. C. D.* (1971), 150 Ind.App. 535, 277 N.E.2d 599. IC 31–4–1–1 *et seq.*, though not establishing the child as a party to the suit, makes clear the primary purpose of the statute is to assure that the care and support of the child born out of wedlock is enforced as a parental obligation the same as for children born in wedlock. *In the Matter of M.D.H.* (1982), Ind. App., 437 N.E.2d 119, 128; *D.R.S. v. R.S.H.* (1980), Ind.App., 412 N.E.2d 1257, 1261; *Sullivan v. O'Sullivan* (1959), 130 Ind. App. 142, 162 N.E.2d 315.

In *Johnson v. Norman* (1981), 66 Ohio St.2d 186, 421 N.E.2d 124, the issue before the Ohio Supreme Court was similar to that before us now but the mother's prior suit to establish paternity had been dismissed with prejudice. There was no trial on the merits as in this case. The court held the child was not barred from bringing a pater-

nity action reasoning that the mother's action was brought under a statute designed to provide a remedy for her alone, though in terms of her needs with respect to supporting the child. The court said:

" 'This court has consistently held that for a judgment or decree to be *res judicata,* or to operate as estoppel, there must be an identity of issues and an identity of parties or persons in privity with the parties. We have also held that the term 'parties' includes those who are directly interested in the subject matter of a suit, who have a right to make a defense, or who control the proceedings.' *Whitehead v. Genl. Tel. Co.* (1969), 20 Ohio St.2d 108, 114, 254 N.E.2d 10. The minor child and the mother here clearly were not in privity. '[A] person is in privity with another if he succeeds to an estate or an interest formerly held by another.' *Whitehead, supra,* at 115, 254 N.E.2d 10. Privity does not generally arise from the relationship between parent and child. *Arsenault v. Carrier* (Me.1978), 390 A.2d 1048, 1051. The mother, in the instant cause, was suing on her separate claim, pursuant to the statutory remedy provided her. Although the mother's claim and the child's claim relate to the same subject matter, the claims are distinct. While the dismissal with prejudice barred the subsequent action of the mother, it in no way affected the child's separate action."

421 N.E.2d at 127.

In *Everett, supra,* the California Court of Appeals held that a court's prior judgment on the merits (in a suit brought by the mother) that the defendant was not the father was not res judicata on the issue of paternity in a subsequent suit brought by the child against the same defendant. The judgment in the initial trial was entered by the court after five days of evidence was heard by a jury, followed by the parties stipulating to taking the issue from the jury and submitting it to the court on the mother's deposition alone. The child's sub-

---

**4.** Although *Everett* questions the efficacy of part of the *Stevens* holding, as pointed out in the

child's brief, the two cases are in accord on this point.

sequent action alleged the prior judgment was the result of collusion between the parties and argued that the alleged father's defense of res judicata should not be allowed. The California appellate court agreed and reversed the lower court's sustaining of the alleged father's demurrer.

In *Commissioner of Public Welfare of City of New York v. Koehler* (1940), 284 N.Y. 260, 30 N.E.2d 587, the New York Court of Appeals affirmed a filiation order entered against a man who was not the husband of the child's mother.[5] The issue in the case pertained to the admissibility of certain evidence. In what appeared to be dictum, the court said:

> "Paternity proceedings are brought to enforce a statutory duty imposed upon the father of a natural child to whom the father at common law owed no duty. *People ex rel. Lawton v. Snell*, 216 N.Y. 527, 111 N.E. 50, Ann.Cas. 1917D, 222. Such a proceeding may be brought by the mother or if the child 'is or is likely to become a public charge' by a public official. Inferior Criminal Courts Act, Section 64, subd. 1. The child is not a necessary party to the proceedings nor is the husband of the mother. The order made in such a proceeding does not constitute an adjudication binding on them or persons claiming through or under them that the child is or is not the legitimate offspring of married parents. An order adjudging that some person other than the mother's husband is the father of the child and ordering him to provide for its support is, it is plain, not a binding adjudication of illegitimacy. It does not establish the status of the child nor would it be competent evidence to establish illegitimacy in any proceeding to which others are parties."

30 N.E.2d at 590, 591. However, New York courts have subsequently considered the above-cited quote as "the seminal holding ... to the effect that a filiation proceeding [in which the child is not a party]

does not determine the status of the child ...." *Michael B. v. Sendi Diann W.* (1983), 121 Misc.2d 475, 467 N.Y.S.2d 1009. *Accord, Dana A. v. Harry M.N.* (1982), 113 Misc.2d 635, 449 N.Y.S.2d 851.

The application of the doctrine of res judicata in the parent-child context was examined in *Privity, Preclusion and the Parent-Child Relationship*, 1977 B.Y.U.L. Rev. 612. The article begins in general terms saying:

> "Provided that the facts meet the criteria for either claim or issue preclusion *and that the parent has adequately represented the child's interest in the first action*, a court can justifiably preclude an action brought on behalf of the child after a judgment is reached in the action brought by the parent. These requirements are generally satisfied in personal injury litigation. Since any recovery on a minor child's claim will usually go to his parents, they have adequate opportunity and incentive to litigate fully the issues or claims on behalf of the child, as well as any related claims that they hold independently." (our emphasis)

*Id.* at 622. In both dissolution and filiation proceedings where paternity is to be established and the child is not a party, the article acknowledges the difficulty in assuring that the child's interests are not compromised. It recognizes, however, that:

> "To inflexibly deny preclusion in domestic relations cases serves to insure preservation of rights, but offends the fundamental preclusion policies. Besides fostering the possibility of inconsistent judgments, postponed finality, and overburdened courts, denial of preclusion in divorce or filiation cases allows relitigation of potentially embarassing [sic] and harassing questions."

*Id.* at 628.

The article asserts that filiation proceedings generate a stronger conflict of policies than do divorce proceedings.

---

**5.** The mother had been living apart from her husband for more than a year. In New York at that time a "child born out of wedlock" included one born while husband and wife had been separate for the year preceding birth.

"The illegitimate child is often an unwanted child, and courts are naturally skeptical of the adequacy of representation by the natural mother. There is a resulting reluctance to apply preclusion based on such representation. Moreover, lower courts are becoming more aware of the need to protect the interests of illegitimates as a result of changing social attitudes toward illegitimacy and recent Supreme Court cases securing for illegitimates many substantive rights.

At the same time, the policies favoring preclusion become even more critical. A determination of nonpaternity should provide an accused man with some assurance of finality, especially if accomplished through the use of blood grouping tests. Inconsistency of judgments in paternity actions is less tolerable than in personal injury litigation; a man is either the father of a child or he is not. Irreconcilable decisions would seem to indicate that one court had failed in its duty to provide a forum for just adjudication of disputes. Finally, unnecessary relitigation of the paternity issue is among the most harassing actions imaginable."
*Id.* at 632.

The article reviews three means by which legislatures and courts have attempted to erase the uncertainty surrounding successive paternity suits. The most viable solution is mandatory joinder of all persons having a significant interest in the litigation. *Id.* at 640. This procedural device is now provided by IC 31–6–6.1–2(c) but the code revision came too late to cover the case now before us.

Some jurisdictions apply a real party in interest rule to include the child as a party to the litigation. *Id.* at 636. But as much as the Indiana cases might recognize the substantial interest a child has in the outcome of litigation brought by her mother to establish the alleged father's paternity under IC 31–4–1–1 *et seq.*, I am unwilling to say that the child was the real party in interest and automatically bound by the prior determination even though not named as a party to the litigation and regardless

of how attentive the mother apparently was to the child's rights.

The law review article lastly discusses the possibility of extending the privity concept. *Supra* at 637. The article cautions that the *per se* inclusion of the parent-child relationship within the realm of privity might increase the dangers of children losing valuable rights through the collusion or compromise of their parents. *Id.* at 638. However, the privity concept has been expanded through cases such as *Armstrong v. Armstrong* (1976), 15 Cal.App.3d 942, 544 P.2d 941, 126 Cal.Rptr. 805, which introduced the notion of a mother's adequate representation of her children's interests in the context of a dissolution proceeding as sufficient to preclude the children from later litigating the father's support obligation to them even though the children were not parties to the dissolution action. The Indiana case *A. B. v. C. D.* (1971), 150 Ind.App. 535, 277 N.E.2d 599, quoted from above, hints at the same possibility that the combination of a parent-child relationship and adequate representation might preclude a child from relitigating issues already contested by her parent. 277 N.E.2d at 617, n. 42.

We are presented with a paternity action brought by a child against a man who several years earlier in an action brought by the child's mother was found not to be the child's father. On first blush it seems patently unfair to subject T.R. twice to litigation of his alleged parental relationship with A.W. The record shows that the first trial was held before a jury, that evidence was presented first by the mother, then by T.R. and then rebutted by the mother, and that the jury after being instructed on the law by the trial judge returned a verdict for T.R. that he was not A.W.'s father. The issue of paternity was not clouded by the possibility of compromise because of other issues to be decided, as might happen in a dissolution proceeding. The suit dealt only with the question of paternity and the concomitant obligation of support in the event paternity was established.

Identity of issues, however, is only one of the four elements T.R. is required to establish before being able to invoke the bar of res judicata. T.R. provides no authority for holding the mother-daughter relationship as being one of privity or for extending the scope of privity due to adequate representation. Under the prior statute the mother had a substantial interest of her own. That in the protection of that interest she might also serve the child's interest is insufficient to establish the exception to privity for representative capacity adopted in *Estate of Nye, supra.* As Justice White said in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation* (1971), 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788:

> "Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position."

We cannot say that a mother who litigates the paternity issue to final judgment in a paternity suit *necessarily* adequately represented her child's interests. In a given case the mother may compromise the final determination for considerations wholly outside the proceedings and personal to her, effectively overlooking the child's interests. I am not saying that such a compromise was part of the present case, but I am unwilling to conclude that the mother's litigation of the issue on the merits is sufficient to create an additional exception to the privity requirements which mark our applications of the doctrine of res judicata. Because T.R. has failed to show privity either in the traditional sense of succession to an estate or an interest formerly held by another, *Johnson v. Norman* (1981), 66 Ohio St.2d 186, 421 N.E.2d 124, or in the sense of true representative capacity the doctrine of res judicata does not apply to preclude A.W.'s suit. The denial of T.R.'s

motion for summary judgment should be affirmed.

I therefore dissent.