DEPARTMENT OF REVENUE & another[1] *vs.*
WAYNE I. JARVENPAA.

Franklin.  November 9, 1988. — February 23, 1989.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Paternity. Parent and Child,* Support of illegitimate child. *Practice, Civil,*
Support of illegitimate child. *District Court*, Jurisdiction, Appellate di-
vision. *Appeals Court,* Jurisdiction. *Jurisdiction,* Paternity proceeding.
*Res Judicata. Constitutional Law*, Separation of powers, Trial by jury.

An appeal from a District Court judgment in a proceeding brought pursuant
to G. L. c. 209C, to establish paternity, was properly entered in the
Appeals Court. [180-181]
Where the Legislature expressly mandated by enactment of G. L. c. 209C,
§ 22(*d*), that no proceeding under G. L. c. 209C to determine the rights
of a child born out of wedlock shall be barred by a prior finding or
adjudication under the earlier paternity statute, G. L. c. 273, § 12,
common law principles of claim or issue preclusion were thereby ren-
dered inapplicable. [181-182]
The separation of powers principles of art. 30 of the Massachusetts Decla-
ration of Rights barred the Commonwealth and its agencies from relitigat-
ing, pursuant to G. L. c. 209C, a question of paternity that was contested
between the Commonwealth and the defendant under the provisions of
an earlier statute, G. L. c. 273, and that was resolved by a judgment
in the defendant's favor [182-184]; however, a child born out of wedlock
was not foreclosed by the prior judgment under G. L. c. 273 from
presenting his own case for support under G. L. c. 209C [184-185].
An action brought pursuant to G. L. c. 209C, to establish the paternity and
support rights of a child born out of wedlock, is not a proceeding in
which a party is entitled to a jury trial under art. 15 of the Massachusetts
Declaration of Rights. [185-189]

[1] The action was commenced in the name of the Commonwealth by the
Department of Public Welfare in October, 1986, on behalf of the mother
of an illegitimate child. In July, 1987, the illegitimate child was joined as
a party plaintiff, and counsel was appointed to represent him. In September,
1987, the Department of Revenue, child support enforcement division, was
substituted for the Department of Public Welfare.

CIVIL ACTION commenced in the Orange Division of the District Court Department on October 9, 1986.

The case was heard by *Allan McGuane*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jane S. Schacter*, Assistant Attorney General (*Rosanna Cavallaro*, Assistant Attorney General, with her) for the Department of Revenue.

*Charlotte S. Guyer* for the child.

*Jack D. Curtiss* for the defendant.

*Jon Laramore*, for Mothers United for Support of Children through Legislative Enactment & another, amici curiae, submitted a brief.

WILKINS, J. In 1986, in a comprehensive act, the Legislature made substantial changes in the law concerning child support in the Commonwealth. St. 1986, c. 310. That act, among other things, inserted an entirely new chapter in the General Laws concerning the rights of children born out of wedlock. G. L. c. 209C (1986 ed.), inserted by St. 1986, c. 310, § 16.

In this proceeding, brought to establish the defendant's obligation to support an illegitimate child (the minor plaintiff), the defendant challenges the constitutionality of two provisions of the 1986 act. He contended in the trial court that this proceeding is barred because in 1984, on a paternity complaint under G. L. c. 273, a jury determined that he was not the father of the minor plaintiff. He argued successfully that the provision in G. L. c. 209C, § 22 (*d*), stating that such an earlier adjudication is not a bar to a G. L. c. 209C proceeding, cannot lawfully be applied to him. Second, if this proceeding may properly go forward, the defendant, who has filed a claim of a jury trial, argues that, under the Constitution of the Commonwealth he is entitled to a trial by jury and that the provision in G. L. c. 209C, § 12, stating that trials in actions under G. L. c. 209C "shall be by the court without a jury," is unconstitutional.

A judge of the District Court Department allowed the defendant's motion for summary judgment and dismissed the action.

Although he filed no explanation of his action, it is reasonably clear that the judge concluded that this proceeding was foreclosed by the earlier paternity determination in the defendant's favor. We transferred the plaintiffs' appeals to this court from the Appeals Court. After deciding that (1) the plaintiffs' appeals were properly entered in the Appeals Court, we conclude that (2) the minor plaintiff is not barred from maintaining this action, but that the Department of Revenue (department) is barred and that (3) the defendant has not demonstrated that he is entitled to a jury trial in this proceeding.

The summary judgment motion was heard on a "stipulation of fact" presented on "the issue of the effect of a previous verdict of not guilty on a criminal complaint for paternity" under G. L. c. 273, § 12 (as appearing in St. 1981, c. 325, and repealed by St. 1986, c. 310, § 25). The minor plaintiff was born February 10, 1982. His mother and the defendant have never been married to one another. She claims that the defendant is the father of the child.

On December 30, 1983, the defendant was. arraigned on a criminal complaint charging him with paternity of the minor plaintiff. The complaint was issued at the request of a representative of the Department of Public Welfare, subrogee to the mother's rights. Blood samples were taken for human leukocyte antigen (HLA) tests and for blood grouping tests. The test results showed that the defendant was not excluded as the father and that there was "a 99.47% probability that Wayne I. Jarvenpaa is the father of [the minor plaintiff]." After a pretrial hearing on the Commonwealth's motion seeking a determination that the test results would be admitted at the defendant's trial, a District Court judge ruled that because of G. L. c. 273, § 12A, the evidence was not admissible.[2] The motion judge denied the Commonwealth's motion for a report of the question of the admissibility of inculpatory HLA test results,

---

[2] General Laws c. 273, § 12A, as appearing in St. 1977, c. 848, § 5, and repealed by St. 1986, c. 310, § 25, provided that blood grouping test results were "admissible in evidence only in cases where definite exclusion of the alleged father as such father has been established."

and the Commonwealth did not attempt to appeal from the ruling excluding the evidence.

On May 15, 1984, the defendant was tried on the criminal complaint before a six-person jury. He, the mother, and other witnesses testified. The jury returned a verdict of not guilty and specifically found that the defendant was not the father of the minor plaintiff.

On October 9, 1986, a representative of the Department of Public Welfare, on behalf of the mother, filed the civil complaint that commenced this proceeding. The complaint seeks a determination that the defendant is the minor's father, an order for suitable future support and health insurance for the child, and restitution of confinement expenses and of expenses since the child's birth. On November 4, 1987, the District Court judge allowed the defendant's motion for summary judgment dismissing the action.

1. We discuss first the question whether the plaintiffs' appeal is properly here. No party claims that it is not. The department's brief notes the problem, and, because it is a jurisdictional question, we should deal with it first.

If the appeal was properly entered in the Appeals Court, we may properly consider it after transferring it here on our own motion. The question is whether the correct avenue for the department's appeal, later joined in by the minor plaintiff, was to the Appeals Court.[3] The problem arises from the fact that G. L. c. 209C provides no express direction concerning the avenue of appeal that may be pursued following entry of judgment. Chapter 209C cases may be entered in the Probate and Family Court, and any judgment entered in that court is appealable to the Appeals Court under G. L. c. 211A, § 10 (1986 ed.). This case, however, was decided in a District Court, and, as to rulings of law, it might be suggested that the normal

---

[3] The department also sought relief from the Appellate Division of the District Court. We are advised by the department's brief that it sought a stay of further proceedings in the Appellate Division pending a decision in this case.

course of appeal in a civil matter tried before a judge without a jury is to the Appellate Division. G. L. c. 231, § 108 (1986 ed.).[4]

The Appellate Division has considered the question of where a G. L. c. 209C appeal lies and has concluded that it lacks jurisdiction of such an appeal because G. L. c. 209C actions are equitable in nature. See *Brown* v. *McCow*, Mass. App. Div. N. Dist. No. 8942, slip op. at 3 & n.2 (May 19, 1988); *Aiello* v. *Spinale*, Mass. App. Div. N. Dist. No. 8958 (May 19, 1988). In deciding as it did, the Appellate Division relied on our opinion in *Walker* v. *Board of Appeals of Harwich*, 388 Mass. 42 (1983), which held that appeals in zoning cases tried in the District Courts should be presented to the Appeals Court and not to the Appellate Division. Although the statute in the *Walker* case ("the parties shall have all rights of appeal and exception as in other equity cases," G. L. c. 40A, § 17 [1986 ed.]), is somewhat clearer on the matter of legislative intent concerning appeals than is G. L. c. 209C, the principle that appeals in cases involving equitable considerations should go to the Appeals Court, in the absence of some other statutory direction, fairly applies here. *Id.* at 49-50. The remedies available in G. L. c. 209C proceedings are equitable in nature. See G. L. c. 209C, §§ 1, 9, 15, 19, and 20.

Practical considerations also support our conclusion that all appeals in G. L. c. 209C cases should go to the same court. Uniformity of treatment of litigants and the development of a consistent body of law will be encouraged by placing all G. L. c. 209C appeals in one court. In the absence of any express legislative direction, we conclude that the principles expressed in our *Walker* opinion and the practical desirability of having all G. L. c. 209C appeals heard in one court call for a determination that G. L. c. 209C appeals go to the Appeals Court.

2. We come then to consider the question whether the present action is barred because the jury in the earlier paternity proceeding under a statute since repealed (G. L. c. 273, § 12), found the defendant not guilty on a complaint charging him with being the father of the minor plaintiff.

---

[4] Appeals of determinations made in District and Municipal Court jury sessions are to the Appeals Court. G. L. c. 211A, § 10.

The Legislature intended that an action such as this could be maintained in spite of a verdict in an earlier proceeding under G. L. c. 273, § 12, in favor of an alleged father. "No proceeding hereunder shall be barred by a prior finding or adjudication under any repealed sections of [G. L. c. 273] or by the fact that a child was born prior to the effective date of this chapter." G. L. c. 209C, § 22 (d). The defendant argues that the language in § 22 (d) concerning prior adjudications was designed only to preserve prior determinations that a man was the father of a child and has no bearing on a prior not guilty determination. The argument lacks a logical basis and is contrary to the apparent meaning of the words used in § 22 (d).

We conclude that the Legislature intended to permit readjudication of the question of paternity under G. L. c. 209C where, under G. L. c. 273, § 12, proof of the alleged paternity of the defendant had not succeeded. Section 22 (d) makes irrelevant all questions concerning the application to this kind of case of common law principles of claim and issue preclusion based on findings and rulings in earlier litigation. Claim and issue preclusion are not founded on constitutional principles, but are matters of public policy. See *Commissioner* v. *Sunnen*, 333 U.S. 591, 597 (1948); *Hooper* v. *United States*, 326 F.2d 982, 985 (Ct. Cl.), cert denied, 377 U.S. 977 (1964); 18 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 4403, at 11 (1981 & Supp. 1988). The Legislature has mandated that there shall be no claim or issue preclusion arising from any adjudication under G. L. c. 273, § 12. See Restatement (Second) of Judgments § 20 (1) (c) (1982); *Premier Elec. Constr. Co.* v. *National Elec. Contractors Ass'n*, 814 F.2d 358, 363-364 (7th Cir. 1987). The remaining question, then, is whether there is any constitutional prohibition against carrying out the Legislature's intent.

The defendant argues that, as we have construed it, § 22 (d) violates art. 30 of the Massachusetts Declaration of Rights, concerning the separation of powers.[5] We agree that separation

---

[5] He makes a passing reference to a claim that relitigation of the paternity issue would violate the due process clause of the Fourteenth Amendment

of powers principles of art. 30 bar the Commonwealth and its agencies from relitigating an issue that was contested between the Commonwealth and the defendant and resolved by a judgment in the defendant's favor. Article 30 prohibits any legislative attempt "to grant a new trial or a rehearing in a cause in the courts, or to declare ineffective or to reverse, annul, change, modify or affect the judgment of a court." *Opinion of the Justices*, 234 Mass. 612, 621 (1920). We recently ruled that a statute that purported to restore a dismissed case to the Superior Court docket was an unlawful attempt to exercise an exclusively judicial power. *Spinelli* v. *Commonwealth*, 393 Mass. 240 (1984). See *Weingartner* v. *North Wales*, 327 Mass. 731, 737 (1951). For art. 30 purposes, it does not matter that in the earlier proceeding the Commonwealth was burdened with an obligation to prove its case beyond a reasonable doubt[6] and had no right to appeal the exclusion of relevant medical tests bearing on the paternity issue.[7] The Commonwealth

---

to the Constitution of the United States. He makes no due process argument under the State Constitution and cites no United States Supreme Court authority in support of his Fourteenth Amendment due process argument. To the extent that, after disposition of the defendant's art. 30 challenge, we uphold the application of G. L. c. 209C to the defendant in this case, no basis for a valid Federal due process of law claim remains.

[6] We had questioned for some time prior to the 1986 amendments why the Commonwealth chose, to its disadvantage, to try paternity issues in a quasi-criminal form. See *Commonwealth* v. *Lobo*, 385 Mass. 436, 441 (1982); *Davis* v. *Misiano*, 373 Mass. 261, 264 (1977); *Commonwealth* v. *MacKenzie*, 368 Mass. 613, 619 n.5 (1975). The 1986 amendments substantially eliminated the Commonwealth's self-inflicted disadvantages. Chapter 209C, however, does require proof of paternity by clear and convincing evidence (G. L. c. 209C, § 7), a standard that is not required by Federal due process considerations. See *Rivera* v. *Minnich*, 483 U.S. 574 (1987).

[7] As we have noted, the Commonwealth had HLA and blood grouping tests available at the time of the earlier proceeding tending to show a high probability that the defendant was the father of the minor plaintiff. A judge ruled the evidence inadmissible. Shortly before the 1986 act was adopted and after the first paternity action had been concluded, we held that HLA tests were a tissue typing system and not blood grouping tests. Thus the provision in G. L. c. 273, § 12A, since repealed (St. 1986, c. 310, § 25), barring the use of the results of blood grouping tests tending to include the

elected to contest the paternity issue on an uneven playing field and cannot now be heard to complain. The Legislature may not constitutionally enact a law that, in effect, vacates final judgments entered under G. L. c. 273 in paternity actions and authorizes the Commonwealth, if it wishes, to relitigate each paternity issue.

We take a different view of the right of the minor plaintiff to proceed in this case. He is not bound by the determination made in the defendant's favor in the Commonwealth's G. L. c. 273 proceeding. Courts elsewhere have generally considered a child born out of wedlock not to be in privity with the State, and thus such a child has not been bound by an earlier determination that a particular man was not his father, made in a proceeding brought by the State seeking to establish support obligations and thereby to reduce its public assistance obligations. See *Settle by and through Sullivan* v. *Beasley*, 309 N.C. 616, 620-621 (1983) (child's interest in paternity determination is not solely economic); *Burley* v. *Johnson*, 33 Wash. App. 629, 640 (1983) (State, parent, and child "each have separate and independent interests in establishing paternity"); *State ex rel. Adult & Family Servs. Div.* v. *Tuttle*, 304 Or. 270, 274 (1987) (Linde, J., concurring). See also *Spada* v. *Pauley*, 149 Mich. App. 196, 199 n.1, 205 n.6 (1986) (mother's paternity action does not bar child's); *Arsenault* v. *Carrier*, 390 A.2d 1048, 1051 (Me. 1978) (same). But see *T.R.* v. *A.W. by Pearson*, 470 N.E.2d 95, 96-97 (Ind. Ct. App. 1984) (two to one decision) (issue preclusion bars retrial because mother fully represented child's interests; dicta suggest same result if original plaintiff were the State).

The minor plaintiff should not be foreclosed by the prior judgment from presenting his own case for support [and perhaps to establish other rights) against the defendant.[8] The prior pro-

---

defendant as the father would not have barred the admission of the results of the HLA tests. See *Commonwealth* v. *Beausoleil*, 397 Mass. 206, 212-213 (1986).

[8] The earlier proceeding ostensibly concerned support obligations and that was the Commonwealth's sole concern. For the child, however, more is at stake in such a proceeding. For example, under G. L. c. 190, § 7, a child

ceeding was not brought in the minor's name, nor could it have been. He should not be held to have lost his rights because of the results of a proceeding in which the Commonwealth, acting for its own financial benefit, elected to contest the paternity issue in disadvantageous circumstances. Legitimate children's support rights are not contested in such unfavorable circumstances, and it would be unfair, and possibly unconstitutional on equal protection grounds (see *Reed* v. *Campbell*, 476 U.S. 852, 856 [1986]; *Mills* v. *Habluetzel*, 456 U.S. 91, 97-99 [1982]), to discriminate against an illegitimate child and cause his support rights to be irretrievably surrendered in such a proceeding. In any event, we see no legislative intrusion into judicial prerogatives in granting to an illegitimate minor the right to maintain an action seeking to establish his father's identity and obligation to support him even though, by prior judicial decision, executive agencies of the Commonwealth had lost the right to impose on the putative father obligations of support in their favor.

We conclude that this action may properly be maintained on behalf of the minor plaintiff, but that it must be dismissed as to the department.

3. Because we conclude that the minor plaintiff may maintain this action, we reach the question whether the defendant may properly be denied a jury trial. The defendant argues that he is entitled to a jury trial even though G. L. c. 209C, § 12, provides otherwise ("[i]n actions under this chapter, the trial shall be by the court without a jury"). He claims that his jury trial right is mandated by art. 15 of the Massachusetts Declaration of Rights and that it cannot be denied by statute. Article 15, quoted in full in the margin,[9] preserves "the common law

---

born out of wedlock may inherit from his natural father to the same extent as if born in lawful wedlock, if the father has been adjudged to be his father in a G. L. c. 273 or G. L. c. 209C proceeding.

[9] "In all controversies concerning property, and in all suits between two or more persons, except in cases in which it has heretofore been otherways used and practised, the parties have a right to a trial by jury; and this method of procedure shall be held sacred, unless, in causes arising on the high seas, and such as relate to mariners' wages, the legislature shall hereafter find it necessary to alter it."

trial by jury in its indispensable characteristics as established and known at the time the Constitution was adopted" in 1780. *Opinion of the Justices*, 237 Mass. 591, 596 (1921). The common law to which the Justices were referring in their 1921 opinion was not only the common law (judge-made law) of England but also, in general, the English statutes in force at the time of emigration, certain other English statutes and "ancient usages." *Commonwealth* v. *Knowlton*, 2 Mass. 530, 534-535 (1807). In the *Knowlton* opinion, this court added the following comment: "So much, therefore, of the common law of England, as our ancestors brought with them, and of the statutes then in force, amending or altering it, — such of the more recent statutes as have been since adopted in practice, — and the ancient usages aforesaid, — may be considered as forming the body of the common law of *Massachusetts* . . ." (emphasis in original). *Id.* at 535.

Among the laws of England brought to this colony was at least that portion of 18 Eliz., c. 3, the Poor Law Act of 1576, that stated that an order to contribute to the support of a bastard could be made by two justices of the peace against the mother or the reputed father. 1 W. Blackstone, Commentaries 458 (1765). It is thus unimportant, for our present purposes, that under the common law of England a father had no legally enforceable duty to support his illegitimate child. See *Commonwealth* v. *Lobo*, 385 Mass. 436, 444 (1982). The obligation of support existed by English statute before 1620, and it was further expressed by laws enacted in Massachusetts. See the statute appearing in the 1672 edition of the General Laws of Massachusetts Colony, at 55, reprinted in Colonial Laws of Massachusetts 1672-1686 (1887);[10] the 1692 statute (Province Laws c. 18, § 5 [1692-1693]).[11]

---

[10]The law, as it appears in the 1672 edition, provided that if a man were "legally convicted to be the Father of a Bastard childe," he had "the care and charge to maintain and bring up the same." There is no reference to a jury's participation or nonparticipation in any bastardy proceeding, but there is an implication that a jury would not be involved (a man so charged is liable for maintenance "unless the circumstances of the Case and Pleas be such, on the behalf of the Man charged, as that the Court that hath the cognizance thereof shall see reason to acquit him").

[11] The 1692 law in different language stated the same obligations and provides no further insight into the jury trial question beyond what the previous law

There are certain clearly identifiable classes of cases for which a jury trial was not provided prior to 1780. See *Parker v. Simpson*, 180 Mass. 334, 344-355 (1902) (Justice Hammond's scholarly, historical discussion of the jury trial provision in art. 15, holding that there was no right to jury trial in matters falling within the jurisdiction of courts of chancery);[12] *Bucknam v. Bucknam*, 176 Mass. 229, 230-231 (1900) (before 1780, matters of marriage, divorce, alimony, and support of legitimate children were heard by the Governor and Council without a trial by jury); *Shirley v. Lunenburg*, 11 Mass. 379, 385 (1814) (claim for support of illegitimate child and mother who removed from town of legal settlement to another town; "all questions relative to the settlement or removal of paupers were heard and determined by the Courts of General Sessions of the Peace, without the intervention of a jury"). Because bastardy actions were generally considered civil actions for the purpose of freeing a municipality from the necessity of supporting the child (see *Commonwealth v. Lobo*, 385 Mass. 436, 444 [1982]), the *Shirley* case, which also involved a question of support for an illegitimate child and was properly tried without a jury, suggests that actions concerning the support of illegitimate children also may have been tried by the justices of the peace without a jury.[13]

---

provided ("unless . . . the justices shall see reason to judge him innocent and acquit him thereof").

[12] "Because the proceedings are equitable in character, this is not the type of proceeding with respect to which a jury trial is required under art. 15 of the Declaration of Rights of the Constitution of the Commmonwealth." *Hatfield v. Klimoski*, 338 Mass. 81, 84 (1958) (statutory action against relative for nonsupport of an indigent).

[13] Resolution of the question of a right to a jury trial in a pre-1780 bastardy action is not provided by St. 1785, c. 66, § 2, which stated that, when a mother prosecuted a man as father of her illegitimate child before the Court of General Sessions of the Peace "she shall be admitted as a competent witness, and her credibility be left to the *jury*" (emphasis supplied). It is unclear whether this phrase implicitly granted a jury trial right in such actions for the first time or merely acknowledged a long-standing practice.

In his study of the Massachusetts legal system between 1760 and 1830, William E. Nelson states that jury trials were first used in paternity cases after the Revolution. As authority for this conclusion he cites only the 1785

The plaintiffs argue that the defendant is not entitled to a jury trial because proceedings under G. L. c. 209C involve newly created rights. If a wholly new cause of action is created, a jury trial right does not attach to that claim. See *Commonwealth* v. *Guilfoyle*, 402 Mass. 130, 135-136 (1988) (civil rights); *Commonwealth* v. *Mongardi*, 26 Mass. App. Ct. 5, 8 (1988) (civil motor vehicle infractions). A claim under G. L. c. 209C against a putative father for the support of an illegitimate child is not, however, a new type of claim that, therefore, carries no jury trial right with it. Cases involving paternity and the duty to support illegitimate children have existed for centuries. Consequently, we cannot sustain the denial of the right to a jury trial to the defendant on the ground that the G. L. c. 209C claim in this case is a new cause of action.[14]

The plaintiffs further argue that G. L. c. 209C paternity and attendant support claims pertain "to equity jurisprudence as generally understood in England and Massachusetts at the time of the adoption of the Constitution," *Commissioner of Banks* v. *Harrigan*, 291 Mass. 353 (1935), and, therefore, no jury right exists. The Legislature may not, however, take away a right to a jury trial simply by a change in procedure that makes an action an equitable one.

The plaintiffs' argument that a paternity claim was not within the class of cases tried to a jury prior to 1780, either because nonsupport claims were not tried to juries or because such proceedings had an equitable aspect (or both), carries some force. In the absence of any demonstration that bastardy actions

___

statute and a 1789 case that does not appear to provide any direct support for the proposition that juries were not used before the Revolution in paternity cases. William E. Nelson, Americanization of the Common Law; The Impact of Legal Change on Massachusetts Society, 1760-1830, at 97 & 108 (1975).

[14] Both before and after the enactment of G. L. c. 209C, a father's legal duty and the facts that had to be proved to establish his obligation were the same. We think the proper focus on the issue of newness is on the question whether, in nonsupport proceedings before 1780, a jury passed on the factual question whether a putative father was the illegitimate child's father. The claim does not become a new one, free of a jury trial right, simply because G. L. c. 209C for the first time gives an illegitimate child the right to commence or participate in the nonsupport action.

were in fact tried to a jury prior to 1780, we conclude that this defendant has not shown that he is entitled to a trial by jury. Our conclusion is supported by the facts that (1) before 1780, matters concerned with the support of legitimate children and with the obligation of towns to support paupers were not tried to juries and (2) the relevant pre-1780 statutory provisions suggest that juries were not to be involved in such cases. Investigation of original records shows that paternity actions were not tried to a jury as a usual practice immediately before 1780.[15]

4. The summary judgment dismissing the action as to the Department of Revenue is affirmed. The summary judgment dismissing the action as to the minor plaintiff is vacated, and the case is remanded to the District Court for further proceedings.

*So ordered.*

---

[15] Investigation by the staff of the Supreme Judicial Court's archives and records preservation project of original court documents shows that juries were not used in paternity cases tried before 1780 in the Court of General Sessions of the Peace, the court in which paternity or bastardy actions were tried. Bastardy proceedings were very common in eighteenth century Massachusetts, and there is no dearth of original records concerning them. See, e.g., Hartog, The Public Law of a County Court; Judicial Government in Eighteenth Century Massachusetts, 20 Am. J. Legal Hist. 282, 299 & n. 70 (1976) (estimating that fornication and bastardy cases accounted for 40% of all cases heard in the Middlesex County Court of General Sessions during the Eighteenth Century).

The record books of the Court of General Sessions in Bristol, Suffolk, and Middlesex counties prior to 1780 indicated that a jury sat on a case by listing that fact in the left margin next to the docket entry. Paternity or bastardy cases in the docket books reviewed do not show that a jury was used in such cases. There was a right of appeal to the Superior Court of Judicature from the Court of General Sessions. Investigation shows few appeals in bastardy cases, and no indication that juries were used in such cases in the Superior Court of Judicature.

We believe that it is appropriate for us to look at the records of pre-1780 cases, where the documents are under the jurisdiction of the judiciary, to ascertain what those official records disclose concerning the procedures that were followed. These records demonstrate that "it [had] heretofore been otherways used and practiced" (art. 15) and, therefore, there was in 1780, and is today, no right to a jury trial in a paternity action.