St. Louis, Iron Mountain & Southern Railway v. Higgins.

St. Louis, Iron Mountain & Southern Railway v. Higgins.

| 44 | 293 |
|----|-----|
| 62 | 320 |
| 44 | 293 |
| 77 | 37 |
| 44 | 293 |
| 690 | 362 |

1. PLEADING: *Answer: Reply: Issue.*
When an answer does not contain a counter-claim or set-off, no reply is admissible. The filing of the answer puts the cause at issue, and the circuit judges should not permit the record to be incumbered with useless and improper pleadings.

2. INFANT: *Release: Disaffirmance.*
An infant's release of a demand is voidable at his election; and the bringing of suit upon the demand is an unequivocal disaffirmance of the release.

3. SAME: *Same: Return of consideration.*
An infant may disaffirm his contract without restoring the consideration received for it.

4. RAILROADS: *Negligence: Contributory negligence.*
A railroad company in using in its trains an old car which is lower than the others, is not guilty of such negligence as to be liable to its servants who knowingly incur the risk, for an injury resulting from the coupling of such old car with another, though the danger be greater than with cars of equal height.

St. Louis, Iron Mountain & Southern Railway v. Higgins.

APPEAL from *Nevada* Circuit Court.
Hon. C. E. MITCHEL, Circuit Judge.

*Dodge & Johnson* for appellant.

1. The answer setting up no matter of set-off or counter-claim, the cause was at issue, and the replication was improper. *34 Ark., 613; Gantt's Digest, sec. 4579.*

2. The evidence discloses but one fact, that *plaintiff was alone responsible* for the accident. *Contributory negligence* is a defense to all actions, except where the negligence of the injured is in point of time prior to the negligence of defendant, and then, and only then, contributory ceases to be a defense after the defendant discovers the negligence of plaintiff and thereupon fails to observe reasonable care in trying to avoid the injury. *36 Ark., 54, 377; 41 Ib., 549.*

3. The contracts of a minor are not *void* but *voidable.* (*7 Ga., 568; 13 Mass., 237; 14 Ib., 460; 12 Pick., 425; 5 Yerg, 59; 1 Des., 596; 31 Ark., 264; 20 Ark., 608.*) And no one but the infant can avoid or disaffirm his acts while living, or his legal representatives if dead. (*6 Ark., 118; 1 Parsons Cont., 319; Tyler on Inf. and Cov., 59; 20 Ark., 608; 34 Ark., 625-6; 31 Ark., 376; 1 Ch. on Cont., 11th Am. ed., 222, note o; 13 Mass, 240.*) He must disaffirm within two years after becoming of age. (*Gantt's Digest, sec. 4130.*) And he must tender or pay back the money he received as the consideration. *1 N. H., 73; 6 N. H., 330; 5 Sm. & M., 222; 5 S. & R., 309; 2 Kent's Com., 240; 5 Hump., 70; 7 Cowen, 179; 15 Mass., 359; 6 Ark., 276; 12 Vt., 28; 1 Gray, 455; 31 Ark., 376; 58 Me., 254; 21 Ala., 675; 44 Mo., 125; 34 Me., 594; 8 Fost., N. H., 101; 7 Cowen, 183.*

4. Defendant being a corporation could act only by servants, and they were of course fellow servants, for

whose acts, even if negligent, the company is not liable. *36 Ark., 46*, and supra.

*W. V. Tompkins* for appellee.

1. The contracts of infants being voidable, can be avoided either before or after coming of age by any positive act of dissent. Bringing suit is sufficient. *10 Peters, 58; 38 Ark., 278; Tyler on Inf. and Cov., p. 70.*

2. It is not necessary for an infant to return or tender back the consideration received before he can rescind or avoid a contract. *69 N. Y., 233; 26 Minn., 248; 10 Pet., 58; Tyler on Inf. and Cov., 77, 78; 43 N. Y., 23; 2 Gr. Ev., sec. 367; 123 Mass , 27.*

3. It was the duty of the company to furnish suitable and safe cars, which it failed to do, and hence is liable. *41 Ark., 382; 36 Ib., 41; 35 Ib., 602; 80 N. Y., 746; 90 Ills., 470; 129 Mass., 268; 2 Am. and Eng. R. Cases, 545; 12 Fed. Rep., 392; 11 Ib., 564; 74 Ind., 440; 100 U. S., 213; Wharton on Neg., 211; 1 Redf. on R., 544.*

4. Where an injury is caused by the negligence of a railroad company the defense of contributory negligence will not avail, unless it exercised reasonable care and diligence to avoid the injury after the danger was known to them. *(36 Ark., 41; 3 Am. and Eng. R. Cas., 365; 71 Mo., 476; 36 Ark., 371 and 607.)* Nor where their conduct is such as to indicate a degree of indifference which may be characterized as recklessness. *(36 Ark., 41 and 371; Cooley on Torts, p. 674.)* In this case appellant was more than once notified of the defective condition of the caboose.

5. It is the duty of the master to explain the dangers of machinery, and especially to the young and inexperienced. *39 Ark., 17; 35 Ib., 602; Cooley on Torts, 553; 44 Ill., 482; Whart. on Neg., 216; Thomps. on Neg., 977–8.*

6. Appellee was a minor, and this a case of emergency. *7 Am and Eng. R. Cases, 414.*

St. Louis, Iron Mountain & Southern Railway v. Higgins.

1. PLEAD-INGS:
Answer:
Reply: Issue.

SMITH, J.   A minor, suing by his next friend, brought this action against the railway company for personal injuries sustained in its service.   The answer traversed the allegation of carelessness in the operation of the defendant's road, and averred contributory negligence, denied the plaintiff's minority and pleaded that for the sum of $125 paid to him, he had in writing released all right of action against the company.   The plaintiff replied that he was a minor when he executed the release and was therefore not bound by it.   Upon this issue the cause was tried and the jury gave a verdict for $4,000.

As the answer did not contain a set-off or counter-claim no reply was admissible.   When the answer was filed, the cause was at issue; and the circuit judges should not permit the record to be incumbered with useless and improper pleadings.   *Gantt's Dig.*, sec. *4579; George v. St. L., 1. M. & S. Ry. Co., 34 Ark., 613.*

2. INFANT:
Release:
Disaffirmance.

The testimony shows that the plaintiff was only about nineteen years of age at the time of his injury, although he appeared to be older; and the release relied upon bears date some four months later, consequently he was not bound by it, if he has signified his election to disaffirm it.   And the bringing of suit is an unequivocal act of disaffirmance.   *Watson v. Billings, 38 Ark., 278; Sims v. Everhardt, 102 U. S., 300.*

3. Return of consideration.

But it is suggested that the plaintiff could not repudiate his contract made in infancy without restoring the consideration he had received.   This doctrine was intimated in *Bozeman v. Browning, 31 Ark., 364;* and it cannot be denied that it has respectable authority to support it.   Yet it seems to be founded upon a misconception of the ground upon which the right is founded, viz., the presumed incapacity of an infant to protect himself against the arts of designing persons and the consequence of his own indiscre-

tion. To require of him, then, to take such care of the consideration received as will enable him to restore it and thereby place the other party in *statu quo*, is to measure his capacity by the same standard that is applied to adults.

" The right to repudiate is based on the incapacity of the infant to contract, and that incapacity applies as well to the avails as to the property itself, and where the avails of the property are improvidently spent, or lost by speculation or otherwise, during minority, the infant should not be held responsible for an inability to restore them. To do so would operate as a serious restriction upon the right of an infant to avoid his contract, and in many cases would destroy the right altogether. * * * The right to rescind is a legal right established for the protection of the infant, and to make it dependent upon performing an impossibility, which impossibility has resulted from acts which the law presumes him incapable of performing, would tend to impair the right and withdraw the protection. Both upon authority and principle, we think a restoration of the consideration could not be exacted as a condition precedent to a rescission." *Green v. Green, 69 N. Y., 553; 25 Am. R., 233; Chandler v. Simmons, 97 Mass., 508; Walsh v. Young, 110 Ib., 396; Gibson v. Slopher, 72 Ib., 279; Buchizky v. DeHaven, 97 Pa. St., 202.*

There is no doubt that the plaintiff suffered severe and permanent injuries, such as to make of him a cripple and render the remainder of his life miserable. But can he recover of the railway company damages for those injuries?

The plaintiff's own deposition is wholly confined to the nature and extent of his injuries and his sufferings. He does not speak of the circumstances under which the accident took place, nor disclose any particulars from which it

St. Louis, Iron Mountain & Southern Railway v. Higgins.

can be inferred whose fault it was. And the same may be said of all the other testimony in the case, except that of one witness, which is given entire.

"I know George Higgins; I was conductor of the train when he was hurt. George was a brakeman. As we were going north from Texarkana, on defendant's railway, about one and a half miles south of Homan, the door to one of the box cars dropped off and two bales of cotton fell out. I told the men to set that car out on side track so that the cotton could be put back and brought on by the next train. George was brakeman on the rear end of the train (hind brakeman). He uncoupled the caboose from the train and left it standing on the main track just below the mouth of the switch. The box car was set out on the switch by a sudden kick back, and the train pulled back to couple on to the caboose. It was then George got hurt. He had to set the switch both ways. The caboose was a little old, and the floor had sagged a little; on this account the drawhead of the caboose was a little lower than that of the freight car, so that in coupling the drawheads would pass one over the other, unless the coupling was successfully made. They used a *crooked link* in coupling the caboose to the other cars. When the box car was set out, George left the *crooked link* in the rear end of the box car, and when the train pulled back on the main track to get the caboose there was a *straight link* on the rear end of the box car that was to be coupled to the caboose. Higgins attempted to make the coupling with this *straight link*, and was unsuccessful, whereupon the drawheads passed and locked, and caught Higgins and crushed him. I was about two car lengths of him at the time, and when he called me I knew what was the matter. It was George's business to make the coupling. *He had been advised of the condition by me, and I had always told him*

*of it ever since he was with me, and that I had a crooked link
with which to make the coupling, and for him to never attempt
to make the coupling without this crooked link.* I had had
charge of this car for about three months. I made com-
plaint twice to the master mechanic, Mr. Finley, about its
condition. *He gave me no assurance* that he would give me
another caboose. George hadn't been very long on the
road, say about two weeks. I don't know that he had not
been on the road before. The *crooked link* was on the hind
end of the car that was set out. *Crooked links* are made to
be used when one drawhead is higher than the other. I
suppose George was in a hurry, as we were hurried about
this sudden emergency, and tried to make the coupling
with the *straight pin* in the rear end of the box car that
was backing down to be coupled to the caboose. The
accident was about 6 o'clock in the morning, about
twilight—it was dusky.

"I had two brakemen on the train. George acted as
hind brakeman. He acted as such in all my employment
of him, about two weeks. *I had no other caboose except this
all the time he was with me.* It was his business to couple
and re-couple this car. *I had told him to use a crooked link*
in making this coupling. He had made several couplings
of this car. I would not have attempted to make this
coupling myself, under any consideration, without a
*crooked link*, but ninety-nine times out of one hundred the
coupling could have been made with the crooked link. I
took George to be from twenty to twenty-two years of age.
He was the brightest of all his brothers. Two of his
brothers, one older and one younger than himself, have been
brakemen. He never told me how he got hurt. I told
him *he ought to have used the crooked link, and if he had he
would not have been hurt. I am not in the employ of defendant
now.*

"When we make a switch it is the hind brakeman's duty to make the uncoupling, open the switch, close the switch, then re-couple the caboose. My train was fully equipped, two brakemen and myself. I was running a through freight. *I think I had sufficient men to do the work.* Two men can do all the work easily, except in case of emergency. Setting out this car was a case of emergency, but two men can do it. No extra pressure was put on Higgins because of no more men. When the switch was made the *crooked link* was left in the hind end of the box car set out. I was particular about keeping sufficient *crooked links* for this caboose, and there was one extra *crooked link* in the caboose when Higgins made the coupling at which he got hurt. As I told you before, *I had always told him to use a crooked link when he made a coupling with the caboose. It was his duty to have taken the straight link out of the rear end of the box car which was to be coupled on to the caboose, and to get a crooked link before making the coupling.* It is the hind brakeman's duty to make all the coupling and uncouplings of the caboose, and to clean it up."

4. Negligence.    A master owes it to his servant to provide suitable means, material, machinery and appliances to do his work. And this rule, in its application to the relations of a railway company to its train-hands, includes a safe track and sound and sufficient cars. Here the proximate cause of the injury was not the old and damaged condition of the caboose, but the attempt to make the coupling with a straight link, against the use of which he had been warned, instead of a crooked link which was furnished him for the purpose.

A railway company, in making use in its trains of an old car which is lower than the others, is not guilty of such negligence as to be liable to its servants, who know-

ingly incurred the risk, for an injury resulting from the coupling of such old car with another, though the danger be greater than with cars of equal height. (*Ft. W., J. & S. R. Co. v. Gildersleeve, 33 Mich., 134, per Cooley, Ch. J.*) And in *Hulett v. St. L., K. C. and N. Ry. Co., 67 Mo., 239,* it was held that a brakeman who undertook to couple together two cars of unequal heights without using the ordinary crooked link, adopted for preventing accidents in such cases, was not entitled to recover for injuries so sustained.

The judgment is reversed and a new trial ordered.