Alexander L. DEL SANTO, Jr., Plaintiff, Appellant,

v.

BRISTOL COUNTY STADIUM, INC., Defendant, Appellee.

No. 5521.

United States Court of Appeals
First Circuit.

Jan. 8, 1960.

Joseph V. Cavanagh, Providence, R. I., with whom Charles J. Kickham, Jr., Boston, Mass., was on brief for appellant.

J. J. Spiegel, Boston, Mass., with whom Z. B. Wiseman, Boston, Mass., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This is a diversity action, the plaintiff, Del Santo, Jr., being a citizen of Rhode Island, and the defendant, Bristol County Stadium, Inc., a Massachusetts corporation. The action is to recover damages for personal injury caused to the plaintiff on defendant's raceway when the car which he was driving overturned and was subsequently struck by another contestant. The defendant filed a motion for summary judgment. This motion was allowed, without opinion, and the plaintiff appealed.

The record, taken most favorably to the plaintiff, would warrant the following findings. The defendant was the owner of an automobile race track, spectator stand, etc., in Seekonk, Massachusetts, hereinafter called the Speedway. It advertised races to be conducted upon the Speedway, and admitted the public on payment of an admission charge. Connected with the operation of the races, in a manner to be more fully considered later, was Monarch Racing Association, Inc., hereinafter called Monarch, a Rhode Island non-business corporation organized under Rhode Island General Laws, Chapter 116, Article III. On September 1, 1956, plaintiff entered a so-called "novice race." Before doing so he paid a "pit fee" to, or which, in any event, went to, Monarch, and executed three documents. The one most favorable to the defendant was entitled "License and Benefit Registration," and was addressed to Monarch. This contained an application for a license to race, and for certain insurance benefits, and concluded with a broad release to Monarch and to the defendant of any other claims or causes of action for any loss or injury that might be sustained on the track. In this document the plaintiff represented that he was born on February 12, 1934. This was an over-statement of age by two years, in order to conceal the fact that he was a minor. In

due course the race commenced. The track was steeply banked. It had been raining, and the surface was wet. On a turn the plaintiff skidded and his car rolled over, but remained on the track. The plaintiff was strapped to his seat, and, except for a cut finger, was not injured. After unsuccessfully trying to release the strap securing the car door, he tied up his finger, obtained a cigarette from the dash, and was removing his safety belt when another participant ran into his car, causing him serious injury. It is not contended that the record would not permit a finding that whoever was in charge of the race was negligent in having allowed it to continue after plaintiff's original "flip."

The plaintiff became of age on February 12, 1957. He brought suit on July 16, 1957, in the district court for the District of Massachusetts against Bristol County Stadium, Inc., alone. The defendant's answer admitted that it was the owner of the Speedway, but denied that it was the operator. It also pleaded a release. In November, 1957 the defendant filed a notice to admit facts, which included a request to admit the genuineness of the three documents above referred to. This the plaintiff refused to do, stating that he had "no recollection of the contents of such documents as he signed * * *" After further pre-trial discovery defendant moved for summary judgment. In opposition to this motion plaintiff, on March 20, 1959, filed an affidavit in which he in effect admitted having executed the documents in question, but stated that he had not read them before signing, and that they had not been explained to him, and, "[b]eing a minor at the time of the signing of such papers, I have disavowed the effect of any such releases or agreements."

In this court, and apparently below, the defendant raised three points. First, that it "had no control whatsoever over the track or the conduct of the race * * *"; second, that the plaintiff assumed the risks inherent in participation in an automobile race; and third, that the plaintiff had released the defendant from liability. Taking the last defense first, it is not disputed that a release is a type of contract which a minor may disaffirm. Dardzinski v. Angelus, 1937, 297 Mass. 288, 289, 8 N.E.2d 816.[1] Massachusetts law is also settled that a minor is not prevented from asserting his disability by the fact that he misrepresented his age. See, e. g., Knudson v. General Motorcycle Sales Co., 1918, 230 Mass. 54, 119 N.E. 359. He must, of course, disaffirm the contract during minority, or within a reasonable time after reaching majority. Compare Welch v. King, 1932, 279 Mass. 445, 450–552, 181 N.E. 846, with Chamberlain v. Employers' Liability Assurance Corp., 1935, 289 Mass. 412, 418–419, 194 N.E. 310. The defendant asserts that plaintiff's first disaffirmance, in spite of its being framed in the past tense, was his affidavit of March 17, 1959, in which he stated "I have disavowed * * *," and that over two years is an unreasonable delay. We think, however, that defendant has failed to analyze the issue. "A minor, in order to avoid a contract, is not obliged to use any particular words or perform any specific acts. Any acts or words showing unequivocally a repudiation of the contract are sufficient to avoid it." Tracy v. Brown, 1928, 265 Mass. 163, 164–165, 163 N.E. 885, 886. Bearing in mind that a release of a future claim is in effect a covenant not to sue, it would be difficult to imagine a more direct repudiation of such an agreement than the institution of suit.

---

1. This is so whether the documents which plaintiff signed are treated as releases, or as covenants to hold harmless and not to sue. This possible distinction arises from the fact that a release, strictly, has sometimes been thought to operate only as to rights already accrued. Compare Hastings v. Dickinson, 1810, 7 Mass. 153, 155, with MacFarlane's Case, 1953, 330 Mass. 573, 576, 115 N.E.2d 925, and see also 2 Restatement, Contracts § 402, Comment b. It is not determinative here, although it may be in some circumstances. See 6 Williston, Contracts §§ 1751A–51D, 1823 (rev. ed. 1938).

See Kaufman v. American Youth Hostels, Inc., 1957, 13 Misc.2d 8, 174 N.Y.S. 2d 580, 588–589, modified on other grounds, 1958, 6 A.D.2d 223, 177 N.Y.S. 2d 587, modified and affirmed on other grounds), 1959, 5 N.Y.2d 1016, 185 N.Y. S.2d 268, 158 N.E.2d 128; St. Louis, I. M. & S. Ry. v. Higgins, 1884, 44 Ark. 293; Arizona Eastern R. Co. v. Carillo, 1915, 17 Ariz. 115, 149 P. 313; cf. Russell v. Barre Plywood Co., 1949, 116 Vt. 40, 43, 47, 68 A.2d 691, 694, 696. The present action was commenced less than six months after plaintiff attained his majority. We could not rule this to be unreasonable.[2]

■ The defense of assumption of the risk requires but little attention. Very possibly plaintiff assumed, as a matter of law, the ordinary risks of a wet track. But the record shows that the track had various facilities for stopping a race in case of emergency, and it could not be ruled that the plaintiff assumed the risk that these facilities would not be properly employed.

■ The final question is whether the defendant was a party liable. The defendant admitted it was the "promoter." In addition to owning the track and equipment, it advertised the races, collected the gate receipts, managed the stands, and maintained the track even to the point of sanding it between races. It also employed the race announcer, and paid for firemen and ambulances. Certain "officials," such as the starter, the scorers, the handicapper, the race director, the gatemen and pitmen, were employed by Monarch. Defendant gave Monarch a fixed percentage of the gate receipts. After setting aside sufficient funds to pay for the insurance applied for by the contestants, and for a policy of "promoters liability insurance," Monarch "disbursed the money among * * * [t]he racing car owners and drivers and or [sic] officials." It possessed no assets except a typewriter.

While Monarch was, strictly, a separate corporation, the enterprise as a whole was a single one, combined in time, activity, and purpose. Rather than being an independent contractor, Monarch, whose business manager was an accountant, would appear to have been simply a bookkeeping shell by which defendant carried out certain phases of the over-all operation of its track. In all events, we could not rule the opposite on this record.

Judgment will enter vacating the judgment of the District Court and remanding the case to that court for further proceedings not inconsistent with this opinion.

---

2. We do not reach the interesting question, on which there appears to be singularly little authority, of whether a "reasonable time to disaffirm" should take into consideration the memory of the minor, and commence to run only when, after majority, the matter first comes to mind. Very conceivably a minor might make an agreement which, by the time he had reached majority, he would have forgotten all about. Cf. Welch v. King, supra.