# G.E.B. & another[1] *vs.* S.R.W.

Plymouth. November 6, 1995. - February 26, 1996.

Present: Liacos, C.J., Wilkins, Abrams, O'Connor, & Greaney, JJ.

*Paternity. Res Judicata. Judgment,* Preclusive effect. *Constitutional Law,* Separation of powers, Contract clause. *Estoppel. Laches. Evidence,* Relevancy and materiality, Hearsay. *Practice, Civil,* Attorney's fees.

A proceeding brought by a child to establish paternity pursuant to G. L. c. 209C was not barred by principles of res judicata by a stipulation of nonpaternity made by the mother and father in settlement of a prior action brought under G. L. c. 273, where G. L. c. 209C, § 22 (*d*), specifically allows collateral attack on judgements entered under the repealed provisions of c. 273 [161-162]; in any event, where the child was not a party to the earlier proceedings, where the mother was not the child's legal representative in those proceedings, and where the child disaffirmed the settlement, the child was not bound by the mother's settlement of the mother's claims in the prior action [162-165].

Article 30 of the Massachusetts Declaration of Rights, which is concerned with the separation of powers of the branches of government, had no application to an action brought by a minor plaintiff under G. L. c. 209C, to establish paternity, some seven years after the child's mother had settled a paternity action brought under G. L. c. 273, since repealed [165]; further, the maintenance of the plaintiff's action did not impair any contract in violation of art. I, § 10, cl. 1, of the United States Constitution, where the child was not a party to the settlement agreement in the prior action [165-166].

An action brought by a child to establish paternity was not barred by principles of estoppel from litigating in her own behalf, where the child was not bound by the settlement of prior paternity proceedings between the mother and father to which the child was not a party and in which the child was not the legal representative of the child. [166]

In a paternity action under G. L. c. 209C, brought in 1990 by a child born in 1982, the defendant did not establish that the delay in bringing the action was unreasonable so as to be barred by laches. [166]

In an action to establish paternity, a certain letter from the mother to the father written when the child was eight, was properly admitted, over the defendant's objection as relevant to the issues to be tried and not for the truth of any matters asserted therein [166-169]; error, if any, in the admission of the letter was not shown to be prejudicial where the judge did not rely on it in concluding that the defendant was the child's father

---

[1]The mother of G.E.B.

and, in any event, the letter was merely cumulative of other proper evidence on that issue [169].

This court declined to imply the standard of clear and convincing evidence into the "sufficient evidence" standard stated in G. L. c. 209C, § 17, for proof of intercourse in a paternity action. [169-170]

At the trial of a paternity action under G. L. c. 209C, the mother's testimony, found to be credible by the judge, was sufficient to establish that the mother and the defendant had engaged in sexual intercourse during the period of probable conception, and the testimony constituted a proper basis for the admission of genetic marker test evidence that demonstrated the probability of the defendant's being the father. [170-171]

In an action to establish paternity, the judge correctly excluded, as irrelevant and inflammatory, evidence proffered by the defendant alleging that the mother of the child had engaged in prostitution at a time outside of the period of probable conception. [171]

The record of a paternity proceeding, including evidence of genetic marker tests, was sufficient to support the judge's findings of fact and rulings of law and supported his conclusion that the defendant was the father of the child in question. [171-172]

There is no statutory authority for the award of appellate attorney's fees to a child who has prevailed in an action under G. L. c. 209C to establish paternity. [173-174]

CIVIL ACTION commenced in the Plymouth Division of the Probate and Family Court Department on August 2, 1990.

The case was heard by *Edward W. Farrell*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*David Berman* for the defendant.

*Ronna D. Howard* for the plaintiff.

ABRAMS, J. The child brought an action in the Probate and Family Court Department for a judgment of paternity under G. L. c. 209C (1994 ed.).[2] The complaint was amended

[2]General Laws c. 209C (1994 ed.), entitled "Children Born Out of Wedlock," was enacted in 1986 with the express purposes of providing rights to children born out of wedlock equal to the rights enjoyed by children whose parents were married at the time of their birth. General Laws c. 209C, § 1, provides, in pertinent part: "Children born to parents who are not married to each other shall be entitled to the same rights and protections of the law as all other children. It is the purpose of this chapter to establish a means for such children either to be acknowledged by their parents voluntarily or, on complaint by one or the other of their parents or such other person or agency as is authorized to file a complaint by section five, to have an adjudication of their paternity, to have an order for their support and to have a declaration relative to their custody or visitation rights ordered by a court of competent jurisdiction."

to name the mother as a plaintiff in response to the defendant's claim that the child could not litigate on her own behalf but rather only through a next friend. The putative father (defendant) moved to dismiss the child's action on the ground that the action is barred by his previous action for declaratory relief brought in June, 1982, against the mother and by the settlement agreement that followed. The defendant also argued that the instant action is barred because the 1982 action for declaratory relief was not an adjudication which was rendered ineffective after the enactment of G. L. c. 209C. His motion to dismiss was denied.

On November 30, 1990, a Probate Court judge ordered that the issues of paternity and support be bifurcated and that the parties proceed first on the issue of paternity. On October 10, 1991, a judgment of paternity was entered in favor of the child and, in a separate ruling, temporary child support and counsel fees were ordered. The defendant appeals from the judgment of paternity, alleging that the Probate Court judge erred in not barring the action and in admitting documentary and oral evidence of a genetic marker test. The defendant also argues that the court erred in awarding support and counsel fees to the child. We granted the defendant's application for direct appellate review of the judgment of paternity and we affirm. We deny the child's request for costs associated with this appeal. We allow the child's motion to strike volume VII of the record appendix. The order awarding child support and counsel fees is not properly before us and, therefore, we do not reach those issues.

*Facts.* The child was born on February 22, 1982, to the mother, who was not then married and had not been married within 300 days prior to the child's birth. The mother asserts that the defendant, with whom she had a sexual relationship for approximately one decade, is the child's father. The defendant disputes this.

In June, 1982, the defendant sought a declaratory judgment against the mother that he was not the child's father. The child was not a party to that action nor was she represented by counsel. Neither a guardian nor next friend was appointed to safeguard the child's interests. That case was settled by an agreement for judgment signed by counsel for the defendant and counsel for the mother. The mother

and the defendant also signed a settlement agreement under which the defendant was to pay the mother $25,000 in exchange for the mother's assent to a stipulation stating that the defendant was not the child's father. The agreement purported to be signed by the mother "acting on her own behalf and on behalf of a daughter born to her on February 22, 1982," and provided that neither party would bring any further action or claim arising out of the facts giving rise to the case being settled. The agreement specifically provided that it "shall be binding upon the successors, representatives, heirs and assigns of both parties including, without limitation, the child." The child did not sign the agreement and the agreement did not provide that the money be used for child support. The stipulation was not signed by a judge of the Superior Court nor filed with the Superior Court.

On August 2, 1990, the child brought an action under G. L. c. 209C against the defendant. Genetic marker tests were performed.[3] The plaintiff's expert, Dr. David H. Bing, opined that these tests showed the statistical probability of the defendant's paternity to be 99.8%.[4] The paternity tests performed would have excluded 98.63% of falsely accused men as the father. The trial judge also found a physical resemblance between the defendant and the child in facial bone structure and complexion.

I. *Res Judicata Effect of 1982 Superior Court Action.*

a. *Adjudication under G. L. c. 273 (1994 ed.).* General Laws c. 209C, § 22 (*d*), provides: "No proceeding hereunder shall be barred by a prior finding or adjudication under any repealed sections of [c. 273] or by the fact that a child was born prior to the effective date of this chapter." The parties dispute whether the 1982 action was an adjudication under a repealed section of c. 273. A Probate Court judge found that the subject matter of the prior proceeding was similar in nature to proceedings under G. L. c. 273, § 12, and did not bar a

---

[3]Similar tests had been performed in connection with the 1982 litigation. Pursuant to G. L. c. 273, § 12A (repealed by St. 1986, c. 310, § 25), they were not admitted in evidence because they did not exclude the defendant as father.

[4]For a discussion of statistical probability, see Peterson, A Few Things You Should Know About Paternity Tests (But Were Afraid to Ask), 22 Santa Clara L. Rev. 667, 685 (1982).

proceeding under c. 209C. We agree. The defendant, as plaintiff in the 1982 action, relied on G. L. c. 273, § 12A, as appearing in St. 1977, c. 846, § 5, in litigating his claim. The mother, as defendant, counterclaimed for "an adjudication under G. L. c. 273, § 12, that [the defendant] is the father of [the child]." It is clear that the parties, in signing the settlement agreement, were agreeing to a legal determination of the paternity of the child. We agree with the trial judge that, "[i]f, instead of a settlement agreement, there had been an adjudication on the merits of the 1982 action in [the defendant's] favor on the question of paternity, there is no doubt that the prior adjudication would *not* have been a bar to [the child's] claim under G. L. c. 209C in the Probate Court" (emphasis in original). See *Department of Revenue* v. *Jarvenpaa*, 404 Mass. 177, 182 (1989). That the stipulation as to paternity was entered by agreement of the parties rather than by the court is immaterial in determining whether it can be attacked collaterally. *Nagle* v. *O'Neil*, 337 Mass. 80, 81 (1958).

General Laws c. 209C, § 22 (*d*), specifically erodes the common law policy on finality of judgments and allows readjudication of paternity where there has been a judgment in favor of the alleged father. See *Jarvenpaa, supra* at 182 ("the Legislature intended to permit readjudication of the question of paternity under G. L. c. 209C where, under G. L. c. 273, § 12, proof of the alleged paternity of the defendant had not succeeded. Section 22 (*d*) makes irrelevant all questions concerning the application to this kind of case of common law principles of claim and issue preclusion based on findings and rulings in earlier litigation"). We conclude that the 1982 Superior Court action is not a bar to the current proceeding.

b. *Preclusive effect of 1983 judgment and agreement on the child.* Even if the 1982 action could operate as a bar to subsequent proceedings, it could not have preclusive effect on the child who was not a party to that action commenced by the defendant against the mother. As a nonparty, the child's rights could not have been prejudiced by the 1982 action. See G. L. c. 231A, § 8 (1994 ed.) ("no declaration shall prejudice the rights of persons not parties to the proceeding").

The child cannot be bound by the mother's settlement of the mother's claims. We cannot conclude that the child's

interests were fully protected by the mother.[5] The child has her own, independent, interests in determining the identity of her father. See *Jarvenpaa, supra* at 184. She has intangible interests independent of monetary support which cannot be equated completely with her mother's interests. *Id.* See *Spada* v. *Pauley,* 149 Mich. App. 196, 205 n.6 (1986), quoting *Wolfe* v. *Geno (On remand),* 134 Mich. App. 433, 435-436 (1984) (Cynar, J., dissenting) ("At some point, the law must recognize the fact that a child's interests in paternity litigation are much greater than the mother's interest in continued support. 'In addition to the right of the child to receive support many other present as well as future rights of the child are involved, depending on the facts and circumstances of a specific case' "). The mother also has independent interests that may prevent her from fully protecting the child's sometimes competing concerns. See *Ruddock* v. *Ohls,* 91 Cal. App. 3d 271, 278 (1979) (mother's emotional and financial needs may prevent her from acting in a proper representative capacity for her child).

The defendant argues that, even if the child were not in privity with her mother and thereby bound, she should be barred from proceeding in this action because her mother was acting as "procheine amie" or "next friend" on her behalf in the 1982 action and released her rights. The child disputes that the mother can bind the child when the mother was not legally the child's representative. See *Rudow* v. *Fogel,* 376 Mass. 587, 589 (1978) (policy forbids assimilation of parent litigating on his own behalf with parent litigating as representative of child). The child cannot be bound by her mother's bare assertion that she was acting on behalf of the child without a formal recognition of her status as guardian or without the child's being joined as a party to the action. See *Jarvenpaa, supra* at 184-185 ("The minor plaintiff should not be foreclosed by the prior judgment from presenting his own case for support (and perhaps to establish other rights) against the defendant. The prior proceeding was not brought in the minor's name, nor could it have been"); *Symonds* v. *Symonds,* 385 Mass. 540, 545 n.7 (1982) ("Any determination that the husband is not the father of a child born to his wife during marriage is, of course, not binding on the child who is not a party to the proceeding").

---

[5]Indeed, the agreement did not provide that any portion of the settlement be used for the child's support.

Other jurisdictions are in accord. See, e.g., *Ruddock* v. *Ohls, supra* at 284 ("In the absence of a full and fair adversary hearing resulting in a judgment on the merits on the issue of paternity a finding of nonpaternity is not binding on the child particularly if collusion is potentially involved or there is a stipulation or agreement by which the issue is decided with less than complete evidence before the court"); *Kieler* v. *C.A.T.*, 616 N.E.2d 34, 38 (Ind. Ct. App. 1993) (children are not bound by judgment in paternity action to which they were not parties); *Arsenault* v. *Carrier*, 390 A.2d 1048, 1051 (Me. 1978) (under previous Maine bastardy statute minor child could not have been a party to prior action so as to be bound by the settlement agreement between his mother and putative father; child not in privity with mother in former action); *Spada* v. *Pauley*, 149 Mich. App. 196, 199 n.1 (1986) ("The doctrine of res judicata additionally does not apply because plaintiff was not a party in his mother's paternity action"); *Commissioner of Pub. Welfare of the City of N.Y.* v. *Koehler*, 284 N.Y. 260, 267 (1940) ("The child is not a necessary party to the [paternity] proceedings nor is the husband of the mother. The order made in such a proceeding does not constitute an adjudication binding on them or persons claiming through or under them . . ."); *Johnson* v. *Norman*, 66 Ohio St. 2d 186, 190-191 (1981) ("Privity does not generally arise from the relationship between parent and child. . . . Although the mother's claim and the child's claim relate to the same subject matter, the claims are distinct. While the dismissal with prejudice barred the subsequent action of the mother, it in no way affected the child's separate action").

Additionally, the child has unequivocally disaffirmed her mother's purported release in the settlement agreement by instigating the instant suit. "[A] release is a type of contract which a minor may disaffirm." *DelSanto* v. *Bristol County Stadium, Inc.*, 273 F.2d 605, 607 (1st Cir. 1960). "A minor, in order to avoid a contract, is not obliged to use any particular words or perform any specific acts. Any acts or words showing unequivocally a repudiation of the contract are sufficient to avoid it." *Id.*, quoting *Tracy* v. *Brown*, 265 Mass. 163, 164-165 (1928). "Bearing in mind that a release of a future claim is in effect a covenant not to sue, it would be difficult to imagine a more direct repudiation of such an agreement than the institution of suit." *Id.*

Even if the mother had been properly acting on behalf of the child, the agreement was subject to disaffirmance by the child who effectively disaffirmed the agreement by filing the instant suit. There is no res judicata effect from the 1982 proceedings.

c. *Constitutionality of G. L. c. 209C, § 22 (d).* The defendant challenges the constitutionality of G. L. c. 209C, § 22 (*d*), under art. 30 of the Massachusetts Declaration of Rights.[6] The constitutionality of c. 209C as it relates to adjudications previously brought under c. 273 has already been decided by this court. *Jarvenpaa, supra* at 184 ("The Legislature may not constitutionally enact a law that, in effect, vacates final judgments entered under G. L. c. 273 in paternity actions and authorizes the Commonwealth, if it wishes, to relitigate each paternity issue. We take a different view of the right of the minor plaintiff to proceed in this case. He is not bound by the determination made in the defendant's favor in the Commonwealth's G. L. c. 273 proceeding"). The defendant misapprehends *Jarvenpaa* when he states "*Jarvenpaa* does not rest upon the precept that the Legislature cannot 'unbind' judgments binding upon the executive branch of government but upon the broader precept that it cannot unbind judgments generally." Article 30 is concerned with the separation of powers of the branches of government. It has no application where a private individual seeks to relitigate an issue already litigated by another private individual.

The defendant also claims that to allow this suit to proceed would be an unconstitutional impairment of contracts in violation of art. I, § 10, cl. 1, of the United States Constitution.[7] The Supreme Court has enunciated a three-part test to determine whether State legislation that affects contracts is constitutional. The threshold inquiry is whether the State law has, in fact, operated as a substantial impairment of a

---

[6]Article 30 of the Massachusetts Declaration of Rights provides: "In the government of this Commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men."

[7]Article I, § 10, cl. 1, of the United States Constitution provides: "No state shall . . . pass any . . . law impairing the obligation of contracts . . . ."

contractual relationship. That threshold has not been crossed in this case. The defendant's contractual rights were only against the mother, not the child. There is no impairment of contract when a State law authorizes a party not bound by that contract to act.

d. *Estoppel and laches.* The defendant argues that the mother is estopped from pursuing this action by virtue of the 1983 judgment and agreement. This argument fails because the mother is not pursuing this action, the child is. The judge held that "[i]n equity I don't believe the child should be barred by her mother's actions." We agree. Because, as we have previously said, the mother was not legally a representative of the child, the child cannot be barred from pursuing her legal rights by her mother's representation that she was acting on the child's behalf. The child has done nothing to induce detrimental reliance on the part of the defendant. There is no estoppel.

The defense of laches is equally inapplicable. Laches is an equitable defense. "A judge may find as a fact that laches exists if there has been unjustified, unreasonable, and prejudicial delay in raising a claim." *Srebnick* v. *Lo-Law Transit Management, Inc.,* 29 Mass. App. Ct. 45, 49 (1990). The burden of proving laches rests with the defendant. *McGrath* v. *C.T. Sherer Co.,* 291 Mass. 35, 59-60 (1935). The defendant in this case has not satisfied his burden of proving that the delay was unreasonable. The judge's ruling that "[t]his action by the child was brought in a reasonable time after the adoption of [c. 209C]" was not clearly erroneous. The defendant offered no proof that the child knew or should have known of her new rights under G. L. c. 209C or that she unreasonably delayed after having such knowledge. "[S]o long as there is no knowledge of the wrong committed and no refusal to embrace opportunity to ascertain facts, there can be no laches." *Stewart* v. *Finkelstone,* 206 Mass. 28, 36 (1910). The defendant's claim of laches must fail.

II. *The Defendant's Claims of Trial Error.*

a. *Admission of exhibit 11.* The defendant objected to the admission in evidence of exhibit 11, a copy of a letter the

mother wrote to the defendant on November 23, 1989.[8] The defendant's objection was overruled and properly preserved. The child argues that when exhibits 8-10, other letters written by the mother to the defendant, were revisited on October 3, 1991, and struck from the record, the defendant, by not asking that exhibit 11 also be struck, waived any objection to its admission. We do not agree. Under Mass. R. Civ. P. 46, 365 Mass. 811 (1974), "it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor." This was done. The fact that exhibit 11 was mentioned again during later testimony does not affect the validity of defense counsel's objection. Therefore, we reach the substantive issue whether exhibit 11 should have been excluded.

i. *Relevancy.* Evidence is relevant if it has a "rational tendency to prove an issue in the case." *Commonwealth* v. *Fayerweather*, 406 Mass. 78, 83 (1989), quoting *Commonwealth* v. *Chretien*, 383 Mass. 123, 136 (1981). See also Proposed Mass. R. Evid. 401 (evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). The trial judge is accorded substantial discretion in deciding whether evidence is relevant. See *Commonwealth* v. *Tobin*, 392 Mass. 604, 613 (1984).

It is unclear from the record for what the purpose the letter was offered.[9] It was apparently offered either to show that the mother considered the defendant to be the child's father

---

[8]The defendant also claimed error in the admission of exhibits 8-10. He, however, correctly conceded in his reply brief that exhibits 8-10 had been struck from the record on defense counsel's objection. There is, thus, no issue as to exhibits 8-10.

[9]The testimony surrounding the admission of the letter in evidence was as follows:

Q: "I am going to show you a document and ask you if you can — do you recognize that document?"

A: "Yes, I wrote that Thanksgiving morning."

Q: "And could you describe what the document is?"

or to explain why the defendant commenced visits with the child in early 1990. As either, the letter is relevant.

ii. *Hearsay.* Hearsay is an "extrajudicial statement offered to prove the truth of the matter asserted." *Commonwealth* v. *Kulesza,* 377 Mass. 264, 269 n.4 (1979). See Proposed Mass. R. Evid. 801 (c). The letter is, thus, hearsay if it was offered in evidence to prove the truth of a matter asserted therein, namely that the defendant is the child's father. However, if it was offered to explain the defendant's visits with the child, it is not hearsay and it is admissible.

If there is any basis for upholding the admissibility of the evidence, the reason on which the decision rests is immaterial and the lower court's ruling is sustained. *North Shore Corp.* v. *Selectmen of Topsfield,* 322 Mass. 413, 416 (1948). We uphold the ruling of the lower court on a general objection if it is supportable on any ground. It is assumed that the ruling was based on the proper ground. *Palm* v. *Kulesza,* 333 Mass. 461, 463 (1956). We assume that the judge overruled the objection because the evidence was properly admitted, not for its truth,

---

A: "It's a letter to [the defendant]."

      ". . .

Q: "Sometime after you mailed this letter, did you hear from [the defendant]?"

A: "Yes, I did."

      ". . .

Q: "And how did you hear from him then?"

A: "The phone rang and my daughter answered the phone and she immediately said to me, 'Mommy, I think it is my Daddy.' I was sort of surprised very happily surprised. . . ."

Q: "Do you remember the substance of your conversation at all?"

A: "I said, please come and visit. [The child] knows the truth. I enlightened my daughter to it. I said, please, the door is always open. She would love to meet and know you, and you could be as happy as she would be."

Q: "What did [the defendant] say?"

A: "He said, 'Yes, I will. As soon as the holidays are over I will be sure to come and visit. . . .' "

but to explain the defendant's visits with the child and that, therefore, the ruling was proper.

We additionally conclude that, to the extent that the evidence may have been admitted in error, the error was not prejudicial. See G. L. c. 231, § 119 (1994 ed.) ("No error in either the admission or the exclusion of evidence . . . is ground for modifying or otherwise disturbing a judgment or order unless the appeals court or the supreme judicial court deems that the error complained of has injuriously affected the substantial rights of the parties"). See *DeJesus* v. *Yogel*, 404 Mass. 44, 48 (1989) ("the substantial rights of a party are adversely affected when relevant evidence is erroneously excluded that, viewing the record in a commonsense way, could have made a material difference"). The burden is on the proponent of the erroneously excluded evidence, or in this case on the proponent of the exclusion, to show that the trier of fact might have reached a different result if the ruling had been different. *Id.* at 48-49. That showing has not been made here. There is no evidence in the judge's findings of fact and conclusions of law that he relied on the letter in determining that the act of intercourse occurred. On the contrary, the judge expressly relied on the mother's testimony which alone is sufficient to prove paternity. See *Department of Revenue* v. *Sorrentino*, 408 Mass. 340, 343 (1990). The letter is merely cumulative on this point. For these reasons, we conclude that the defendant is not entitled to any relief because of the admission of exhibit 11, the November 23, 1989, letter.

b. *Admission of documentary and oral testimony of Dr. Bing.* General Laws c. 209C, § 17 (1994 ed.), requires that the judge, on the motion of a party, order blood or genetic marker tests on the mother, child, and putative father in an action to establish paternity on "proper showing" by the requesting party. "An affidavit by the mother or the putative father alleging that sexual intercourse between the mother and the putative father occurred during the probable period of conception shall be sufficient to establish a proper showing." G. L. c. 209C, § 17. Once the test is performed, "the report of the results of blood grouping or genetic marker tests, including a statistical probability of the putative father's paternity based upon such tests, shall be admissible in evidence without the need for laying a foundation or other proof of authenticity or accuracy . . . provided . . . that such

report shall not be considered as evidence of the occurrence of intercourse between the mother and the putative father; and provided, however, that such report shall not be admissible absent sufficient evidence of intercourse between the mother and the putative father during the period of probable conception." *Id.*

The defendant disputes the sufficiency of the evidence of intercourse between the mother and himself during the period of probable conception. The judge ruled that the question of whether "there was intercourse between the parties on several dates in May and June, [1981,] is [judged] by a preponderance of the evidence." The defendant asserts that this ruling was erroneous. He contends that "sufficient evidence" as required by G. L. c. 209C, § 17, refers back to the burden in G. L. c. 209C, § 7, to establish paternity by clear and convincing evidence.[10] This reading of G. L. c. 209C, § 17, is contrary to the well-established rule of statutory construction that "where the Legislature has employed specific language in one paragraph, but not in another, the language should not be implied where it is not present." *Beeler* v. *Downey*, 387 Mass. 609, 616 (1982). We decline to imply the clear and convincing standard into § 17 where it is not expressly required.

Evidence of intercourse between the defendant and the mother consisted of the mother's testimony.[11] The judge found the mother's "testimony in this regard to be credible . . . .

---

[10]General Laws c. 209C, § 7 (1994 ed.), provides: "The burden of proof in proceedings under this chapter to establish paternity shall be by clear and convincing evidence."

[11]The defendant attempted to show prior inconsistent statements by the mother as to the dates of intercourse through the introduction of evidence of the mother's deposition taken in connection with the 1982 action. This evidence was excluded at trial. The defendant now claims that that exclusion was in error. The child has moved that the evidence, contained within Volume VII of the record appendix, be struck from the record. See *infra.* The child's motion is allowed. The defendant admits in his appellate brief that the exclusion was "almost certainly harmless" and the defendant's only support for his contention that the evidence should not have been admitted is inapposite. The defendant's argument on this point does not rise to the level of appellate advocacy required by this court. See Mass. R. A. P. 16 (4), as amended, 367 Mass. 921 (1975); *Zora* v. *State Ethics Comm'n*, 415 Mass. 640, 642 n.3 (1993) (bald assertions of error lacking legal argument and authority do not rise to level of appellate argument); *Lolos* v. *Berlin*, 338 Mass. 10, 14 (1958) ("the right of a party to have this

The judge concluded on the facts] that the child born to [the mother] on February 22, 1982, was conceived by her as the result of sexual intercourse with the Defendant in May or June of 1981." This is legally sufficient. *Sorrentino, supra* at 343 ("The mother of the child testified that approximately nine months before the child was born she had sexual relations with the defendant and that she had no relations with anyone else around that time. That evidence was sufficient to establish clearly and convincingly, consistent with the plaintiff's burden of proof, that the defendant was the child's father").

c. *Exclusion of evidence that in 1980 the mother was allegedly a prostitute.* Defense counsel's offer of evidence of the mother's alleged prostitution outside of the period of probable conception is both irrelevant and inflammatory. It was properly excluded under both the common law and G. L. c. 209C, § 16 (*d*) (1994 ed.). See *Easdale* v. *Reynolds*, 143 Mass. 126, 128 (1886) ("It is the general rule, that no act of sexual intercourse between the complainant and any other man than the respondent is admissible in evidence, unless it is so near in time as to afford some evidence that it resulted in begetting the child named in the complaint"); *Parker* v. *Dudley*, 118 Mass. 602, 605 (1875) ("In a proceeding of this nature [paternity], the character of the complainant for chastity is not put in issue, and such evidence is irrelevant"); G. L. c. 209C, § 16 (*d*) ("In an action to establish paternity, testimony relating to sexual access to the mother by an unidentified man at any time or by an identified man at any time other than the probable time of conception of the child is inadmissible in evidence unless offered by the mother"). Evidence of the mother's alleged prostitution was properly excluded. Defense counsel's contention on appeal that such exclusion was error is frivolous.[12]

d. *Correctness of the adjudication of paternity.* The defendant argues that the judge's decision to credit the testimony

court consider a point entails a duty; that duty is to assist the court with argument and appropriate citation of authority").

[12]Because the proposed testimony was irrelevant, there was no unconstitutional denial of the defendant's due process rights in its exclusion. The defendant's argument that G. L. c. 209C, § 16 (*d*), is unconstitutionally sex-based discrimination is similarly without merit. The provisions of § 16 (*d*) "rest on more than a sex-based classification. They reflect significant

of the mother over his testimony was "plainly wrong." He further argues that the judge gave improper weight to the genetic marker evidence in light of cross-examination that established that some scientists question the reliability of human leukocyte antigen (HLA) testing. See generally *Commonwealth* v. *Beausoleil*, 397 Mass. 206 (1986).

We return to the familiar maxim: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Mass. R. Dom. Rel. P. 52 (a) (1995). See *Commonwealth* v. *Willis*, 415 Mass. 814, 821-822 (1993) (Liacos, C.J., dissenting) ("The determination of the weight and credibility of the testimony is the function and responsibility of the judge who saw and heard the witnesses, and not of this court. In such a situation, where subsidiary findings of fact have been made by the trial judge, they will be accepted by this court, and we do not substitute our judgment for his, absent clear error. . . . Questions of credibility are, of course, for the trial judge to resolve"); *New England Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671, 675 (1977) ("In deciding whether a judge's subsidiary finding of fact is clearly erroneous, it must be emphasized that it is the trial judge who, by virtue of his firsthand view of the presentation of evidence, is in the best position to judge the weight and credibility of the evidence. . . . Thus, a finding of fact by the trial judge will not be deemed 'clearly erroneous' unless the reviewing court on the entire evidence is left with the firm conviction that a mistake has been committed. [Citations omitted.])" We conclude that the record was sufficient to support the judge's findings of fact and rulings of law.

iii. *Award of support and attorney's fees.* The defendant's claim of error as to the award of weekly support payments and counsel fees is premature. The order of which the defendant complains is a temporary order, not a final judgment; a hearing on the issues of support, custody, and visitation is pending in the Probate Court. The issue whether the child is barred from receiving support because of her mother's settle-

---

circumstantial differences between the fathers and the mothers of illegitimate children." *Commonwealth* v. *MacKenzie*, 368 Mass. 613, 617-618 (1975).

ment is better addressed at that hearing.[13] The issue of counsel fees also is to be addressed in further hearings in the Probate Court.[14]

iv. *Award of attorney's fees and costs of appeal.* The child has requested her attorney's fees and costs of appeal. "As a general rule in Massachusetts, a litigant must bear his own expenses except in so far as (1) a statute permits awards of costs . . . or (2) a valid contract or stipulation provides for costs, or (3) rules concerning damages permit recovery of costs" (citations omitted). *Fuss* v. *Fuss (No. 1),* 372 Mass. 64, 70 (1977). There is no valid contract or stipulation providing for attorney's fees and attorney's fees cannot be awarded under a rule concerning damages which permits such a recovery. Thus, the award of appellate attorney's fees for a paternity action is proper only if a statute expressly permits such an award.

The child argues that G. L. c. 215, § 45 (1994 ed.), provides authority for the award. Her reliance on c. 215, § 45, is misplaced. "Chapter 215, § 45, permits awards of costs in declaratory judgment actions in Probate Court only when such actions concern matters relating to wills and estates . . . ." *Fuss, supra* at 71, citing *United Tool & Indus. Supply Co.* v. *Torrisi,* 359 Mass. 197, 199 (1971). Because § 45 is limited to wills and estates there is no statutory authority for us to allow the child's motion for attorney's fees. The motion must be denied.

The child's claim that she should be allowed attorney's fees on appeal because a legitimate child would be entitled to appellate attorney's fees in a support case must fail because, as

---

[13]We further note that the defendant did not file notice of an appeal from the order awarding temporary support and attorney's fees to the child. For this additional reason, we do not reach these issues. See Mass. R. A. P. 3 (c), as amended, 378 Mass. 927 (1979) ("The notice of appeal shall specify the party or parties taking the appeal and shall, in civil cases, designate the judgment, order or part thereof appealed from").

[14]The Probate Court judge may also, in his discretion, award the child attorney's fees for that portion of her attorney's appellate work that was devoted to refuting the defendant's claim of error as to the award of weekly support payments and attorney's fees.

discussed *supra,* the issue of child support is not properly before the court at this time.[15]

The judgment of paternity is affirmed.

*So ordered.*

---

[15]If the final support order is appealed, the child may petition the Probate Court for an award of attorney's fees to defend the appeal. See *Nelon* v. *Nelon,* 329 Mass. 643 (1953) (award of attorney's fees under G. L. c. 208, § 38 [1994 ed.]), may include work done on appellant's behalf in defending an appeal); *Frederick* v. *Frederick,* 29 Mass. App. Ct. 329, 335 (1990) ("The same principles should apply to the wife's counsel fee and expenses on appeal"). As such fees would be available to a child born to married parents, equal protection requires the award of such fees in the discretion of the Probate Court to a child born out of wedlock. See *Doe* v. *Roe,* 32 Mass. App. Ct. 63, 69 (1992).