Singh, J.
In response to the defendant-tenant’s failure to vacate after a thirty-day notice to quit for violations of lease provisions, the plaintiff-landlord instituted this summary process action. After a jury-waived trial, judgment was entered in favor of the landlord. The tenant has appealed, primarily on the basis that the trial judge relied on allegedly improper hearsay evidence. We conclude that the trial court based its judgment on properly admitted evidence that was sufficient to warrant its judgment.
The trial judge’s findings, supplemented with consistent facts from the transcript, indicate that the defendant-tenant, James O’Leary (“O’Leary”), began residing at the 114-unit, four-building apartment complex known as Cedar Glen in September, 2007 *139 under a written lease with Equity Residential Management Corporation, as agent for Cedar Glen, LP (“Cedar Glen”). The building in which O’Leary lived was reserved for elderly and disabled residents and had a project-based Section 8 subsidy attached to it.
Shortly after he moved in, O’Leary had an incident with another resident, Margaret Patnaude (“Patnaude”), when he parked in her parking space. O’Leary asked whether he was in Patnaude’s space, and she confirmed that he was. O’Leary then told her that she could not have her space back until she stopped using her air conditioner at night. Patnaude explained that the noise was not from an air conditioner, but rather from an oxygen tank that her doctor had prescribed for her so that she could breathe properly. O’Leary indicated that he did not care what the noise was, but that it needed to stop. Eventually, O’Leary allowed Patnaude to have her parking space back, but continued to harass her by calling her filthy names (“F-ing bitch,” “asshole,” “scum,” “slimy”) whenever their paths crossed.[1] By letter of November 8, 2007, Cedar Glen sent O’Leary a “notice of lease violation,” indicating that it had received resident complaints that O’Leary had engaged in verbal threats, harassment, profanity, and stalking towards other residents, in violation of the lease.[2]
Two years later, O’Leary approached Patnaude’s home health care worker in the parking lot and attempted to ask her questions about Patnaude. The worker complained to Cedar Glen that O’Leary was bothering her. At one point, Patnaude opened her apartment door because O’Leary had been banging on it. When she did so, O’Leary began to scream at her. With the home health care worker watching, Patnaude slammed the door shut. As a result of this incident, the employment agency for the home health care worker would not allow her to continue working there any longer.[3]
On October 21, 2009, Patnaude was getting her mail in a common area of the apartment complex when O’Leary approached and started harassing her. He called her “fatso” and “fat bitch” and asked whether she had taken a look at herself in the mirror lately. Patnaude asked him to leave her alone, but O’Leary pushed her with his forearm. When Patnaude could break free, she reported the incident to Cedar Glen and to the police and obtained a restraining order against O’Leary.[4] On October 29, 2009, Cedar Glen’s representatives met with O’Leary, who had a representative of Elder/Human Services with him, concerning the various complaints it had received in an attempt to resolve the ongoing problems. On November 2, 2009, an *140 individual who was delivering an oxygen tank to Patnaude complained to her that he had been stopped by O’Leary, who had inquired about Patnaude and whether she really needed oxygen.[5] That day, Cedar Glen, through its counsel, sent a “final warning and demand letter” to O’Leary, requesting that he cease and desist from conduct interfering with the quiet enjoyment of other residents.
As of January 20, 2010, O’Leary renewed his lease for a one-year period. According to the lease terms, O’Leary agreed to “live in a peaceful way respecting the rights of other residents to comfort, safety, privacy, security, and peaceful enjoyment and to refrain from all acts which would interfere with such rights.” Additionally, O’Leary agreed “not to commit any disturbance or nuisance, private or public” and “not to obstruct free use or access of common areas.” On September 29, 2010, Patnaude went out to do her laundry, carrying her wash clothes on her walker. In her path was an extension cord that ran from O’Leary’s apartment, through a screened-in porch, to a car. As the cord was obstructing her path, Patnaude pushed it aside. O’Leary then came out screaming and calling Patnaude names (“the T word” and “bitch”). Patnaude proceeded to the laundry room. O’Leary followed Patnaude into the laundry room and continued to scream at her. A neighbor heard the disturbance and came to the laundry room to assist Patnaude. O’Leary then began yelling at the neighbor. The neighbor escorted Patnaude to her apartment, and O’Leary followed, continuing to scream at them both.[6] Several residents complained to Cedar Glen concerning this incident.[7]
By letter of October 20,2010, Cedar Glen issued to O’Leary a “notice terminating tenancy,” a thirty-day notice to quit that alleged violations of lease provisions, including those provisions requiring O’Leary to live in a peaceful manner, to respect the rights of other tenants, and to refrain from committing disturbances or from obstructing free use or access to common areas. The notice indicated that Cedar Glen had received numerous complaints from residents regarding O’Leary’s disturbances and specifically detailed the allegations concerning the events of September 29, 2010.
O’Leary first contends that the trial judge improperly admitted and relied on hearsay evidence of complaints made against him. Specifically, O’Leary complains that the property manager was allowed to testify as to resident complaints about O’Leary and to introduce letters from residents to management complaining about his behavior. With respect to the letters, the trial judge indicated that he was accept *141 ing them as proof that complaints were made, not for the truth of the details of those complaints. Hearsay is an “extrajudicial statement offered to prove the truth of the matter asserted.” G.E.B. v. S.R.W., 422 Mass. 158, 168 (1996), quoting Commonwealth v. Keizer, 377 Mass. 264, 269 n.4 (1979). The complaints in this case were not hearsay because they were offered, and accepted by the court, to prove only that Cedar Glen had notice or knowledge that complaints had been made by other residents against O’Leary. See Pardo v. General Hosp. Corp., 446 Mass. 1, 18 (2006); Lennon v. Durcan-Cuddy Ins. Agency, Inc., 2008 Mass. App. Div. 147, 150. Similarly, the bulk of the property manager’s testimony was admitted for the same nonhearsay purpose. Nevertheless, O’Leary complains that, regardless of what the trial judge indicated, he in fact relied on the evidence for the truth of the matter asserted in the complaints. One of the problems with O’Leary’s argument is that the substance of the complaints was admitted into evidence, without objection, through other witnesses. Rather than improperly relying on the property manager’s testimony and letters, the trial judge relied on evidence that was properly before him without objection.
O’Leary next contends that evidence of any conduct, other than the September 29, 2010 incident, was irrelevant to the proceedings since the notice to quit identified only that incident as the basis for the eviction. While the notice to quit specifically identified the September 29, 2010 incident, it also put O’Leary on notice of an entire course of conduct by him in violation of lease provisions. To the extent that incidents that occurred prior to the current lease put into context O’Leary’s conduct, we cannot say that such incidents were irrelevant. A trial judge is given “great latitude and discretion” in determining what evidence is relevant, Bank v. Thermo Elemental, Inc., 451 Mass. 638, 670 (2008), quoting Commonwealth v. Sicari, 434 Mass. 732, 752 (2001), and the judge’s ruling will not be disturbed on appeal absent “palpable error.” Commonwealth v. Sylvia, 456 Mass. 182, 192 (2010), quoting Commonwealth v. Simpson, 434 Mass. 570, 579 (2001). In any event, the September 29, 2010 incident alone was a sufficient basis upon which the trial judge could have based his decision.
Finally, O’Leary’s contention that the trial judge was biased against him because, on a single occasion, he instructed O’Leary to testily only as to matters actually observed by him firsthand, fails to establish a claim of judicial bias.
Judgment affirmed.
So ordered.

 The entirety of this incident was introduced into evidence, without objection, through the testimony of Patnaude.

 The notice of lease violation was admitted into evidence over O’Leary’s objection. Although the objection was not fully articulated, it appears that the basis was relevance. O’Leary argued that the notice to quit identified a single incident on September 29,2010 as the basis for the eviction and, thus, that any other incident on any other date was irrelevant to the proceeding.

 This incident was introduced into evidence, without objection, through the testimony of Patnaude.

 This incident was also introduced, without objection, through the testimony of Patnaude.

 This incident was also introduced, without objection, through the testimony of Patnaude.

 This incident was also introduced into evidence, without objection, through the testimony of Patnaude. In addition, another resident testified that she had witnessed O’Leary at that time shouting epithets (“a-hole,” “bitch,” “slimy”) and gesticulating at Patnaude and the neighbor who was assisting her.

 These written complaints from residents concerning the September 29, 2010 incident were admitted into evidence over O’Leary’s objection. O’Leary objected on the basis of hearsay; however, the judge accepted the letters as evidence that complaints had been lodged. The complaint letters were from Patnaude, the neighbor who assisted her, and the resident who testified at trial.